UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LIGHTWAVE COMMUNICATIONS, LLC

Petitioner,

-against-

VERIZON SERVICES CORP.,
VERIZON MARYLAND INC.,
VERIZON VIRGINIA INC.,
VERIZON SOUTH INC.,
and VERIZON WASHINGTON D.C. INC.

Respondents.

Civil Action No.

Motion Date:  August 13, 2007

Oral Argument Requested

**MEMORANDUM IN SUPPORT OF LIGHTWAVE MOTION FOR
PARTIAL CONFIRMATION AND PARTIAL VACATUR
OF ARBITRATION AWARD**

Andrew M. Klein, Esq. (AMK8870)
KLEIN LAW GROUP, PLLC
Attorneys for the Petitioner
LIGHTWAVE COMMUNICATIONS, LLC
4800 Montgomery Lane, Suite 700
Bethesda, MD 20814
(301) 664-6330
(301) 664-6323 (fax)
AKlein@KleinLawPLLC.com

## TABLE OF CONTENTS

Summary of Argument ................................................................................ 1

Summary of Facts .................................................................................... 2

I.      The Parties ................................................................................. 2

II.     The Parties' Relationship ............................................................... 3

III.    The Billing Dispute ...................................................................... 6

IV.     The Arbitration ........................................................................... 7

V.      The Award ................................................................................. 9

VI.     Jurisdiction and Venue .................................................................. 12

VII.    THE PARTIES ARE IN AGREEMENT THAT THE AWARD  SHOULD BE
        CONFIRMED AND ENFORCED IN RELEVANT PART ............................... 12

VIII.   IDENTIFICATION AND DESCRIPTION OF ITEMS AND  ISSUES SUBJECT TO
        MOTION TO VACATUR ................................................................... 15

        A.      LOCAL USAGE .................................................................. 16

        B.      INTEROFFICE DEDICATED TRANSPORT (ULY3X) ..................... 17

        C.      GROUP II DISPUTES .......................................................... 18

        D.      LATE FEES ..................................................................... 19

        E.      PLATFORM LOOPS (R2HX1) ................................................ 20

        F.      MISCELLANEOUS USAGE .................................................... 21

IX.     THE AWARD SHOULD BE VACATED IN PART .................................... 21

        A.      THE ARBITRATOR VIOLATED THE ARBITRATION ACT BY EXCEEDING
                OR IMPERFECTLY EXECUTING HIS POWER IN SEVERAL MATERIAL
                RESPECTS ...................................................................... 23

                1.      The Arbitrator Exceeded His Authority ............................. 23

                        a.      *The Award Permits Verizon to Demand Unlawful Charges in
                                Violation of the Federal Communications Act and the Agreement.*
                                ................................................................... *23*

                        b.      *The Arbitrator Cannot Order the Reversal of Credits Approved by
                                Regulatory Agencies or Award Verizon for Erroneously Billed
                                Charges or Charges That Exceed The Lawful Rate* ..................... *30*

c. The Arbitrator Exceeded His Authority by Awarding Late Fees to Verizon. ................................................................................... 33

(1) The Agreements Do Not Permit the Arbitrator to Award Late Fees. ................................................................................... 33

(2) The Arbitrator Failed to Apply the Law when he  Awarded Late Fees to Verizon, Particularly where the Account is Overpaid by Lightwave. ................................................................................... 35

d. The Arbitrator Exceeded His Authority by Not Conducting the Arbitration in Accordance with the Agreement. ........................... 36

2. Arbitrator Imperfectly Executed His Power Such That There is Lacking a Final and Definite Award. ...................................................................... 39

B. THE ARBITRATOR ENGAGED IN MISBEHAVIOR PREJUDICIAL TO LIGHTWAVE BY AWARDING AMOUNTS TO VERIZON WITHOUT HAVING SUFFICIENT EVIDENCE TO MAKE AN INFORMED DECISION 42

1. Late Fees ........................................................................................ 43

2. Platform Loop (R2HX1) .................................................................. 45

C. VERIZON PROCURED ITS AWARDS THROUGH FRAUD AND/OR UNDUE MEANS. ............................................................................................ 47

D. THE AWARDS TO VERIZON SHOULD BE VACATED FOR THEIR MANIFEST DISREGARD OF THE LAW AND VIOLATION OF PUBLIC POLICY ............................................................................................ 50

Conclusion ............................................................................................. 56

## Summary of Argument

Petitioner Lightwave Communications seeks by this motion partial confirmation and partial vacatur of an arbitration award addressing billing disputes between Lightwave and Verizon. Both Verizon and Lightwave are telecommunications companies regulated under the Federal Communications Act, and are parties to contracts under that Act. The Communications Act requires that Verizon provide service on a just and reasonable basis, and that its billing be done accurately.

Parts of the arbitration award should be enforced, accounting for items conceded by Verizon during the arbitration, items awarded to Lightwave, and items billed and claimed by Verizon but not awarded to it.

The Federal Arbitration Act provides that a court may vacate an arbitration award on a number of grounds, such as where the arbitrator exceeded his powers, the award was procured by fraud or undue means, where the arbitrator engaged in misbehavior prejudicial to the rights of a party, the arbitrator demonstrated a manifest disregard of the law, or the award is against public policy. While arbitration awards are not vacated lightly, the award that resulted from the arbitration below does warrant partial vacatur under these standards.

Vacatur of certain portions of the award is appropriate. The arbitrator exceeded his powers in issuing awards to Verizon that violate the Communications Act, as the award, among other defects, would permit recovery of charges that exceed rates set pursuant to the Act, and authorizes charges for items not actually being provided.

Another portion of the award properly subject to vacatur would improperly permit Verizon to collect late payment charges on the disputed items, in violation of the parties'

agreements. The award would also improperly reverse prior credits for overcharges already acknowledged by Verizon but never posted to the Lightwave account.

The awards to Verizon are also subject to vacatur under the Act since they result from arbitral misbehavior and manifest disregard of the law specifically required to be enforced under the agreements. Finally, the Verizon awards may also be vacated as having been procured through fraud and undue means, and as being directly contrary to well-established public policy.

In light of these facts, Lightwave Communications respectfully requests that its Motion for Partial Confirmation and Partial Vacatur of the Arbitration Award be granted in accordance with sections 9 and 10 of the Arbitration Act.

## Summary of Facts

### I.     THE PARTIES

Petitioner Lightwave Communications, LLC ("Lightwave") is a Delaware corporation with its principal place of business in Laurel, Maryland.

Respondent Verizon Services Corp. is a Delaware corporation with its principal place of business in Arlington, Virginia. Verizon Services Corp. executed the parties Wholesale Advantage Services Agreement ("Wholesale Agreement") on behalf of each of its affiliated Incumbent Local Exchange Carriers listed in Attachment 1 to the Wholesale Agreement and as defined in Paragraphs 3, 4, 5, and 6 below (Verizon Services Corp. and its affiliated Incumbent Local Exchange Carriers, collectively "Verizon").[1]

Respondent Verizon Maryland Inc., a Maryland corporation, is the Verizon-affiliated Incumbent Local Exchange Carrier in Maryland. Lightwave and Verizon Maryland Inc. are

---

[1] The Wholesale Agreement is located at Rcd., at 2027 *et seq.*

parties to an Interconnection Agreement effective July 30, 2003, in accordance with 47 U.S.C. § 252.

Respondent Verizon Virginia Inc., a Virginia corporation, is a Verizon-affiliated Incumbent Local Exchange Carrier. Lightwave and Verizon Virginia Inc. are parties to an Interconnection Agreement effective November 25, 2002, in accordance with 47 U.S.C. § 252.

Respondent Verizon South Inc., a Virginia corporation, is a Verizon-affiliated Incumbent Local Exchange Carrier in Virginia. Lightwave and Verizon South Inc. are parties to an Interconnection Agreement effective August 7, 2002, in accordance with 47 U.S.C. § 252.

Respondent Verizon Washington, D.C. Inc., a New York corporation, is the Verizon-affiliated Incumbent Local Exchange Carrier in the District of Columbia. Lightwave and Verizon Washington, D.C. Inc. are parties to an Interconnection Agreement effective July 30, 2003, in accordance with 47 U.S.C. § 252. (the Interconnection Agreements between Lightwave and Verizon, defined above, are hereinafter collectively the "Interconnection Agreements").[2]

## II.     THE PARTIES' RELATIONSHIP

Verizon and Lightwave are both certificated to provide telecommunications services under Federal and state law and regulation. Verizon and its affiliated operating companies, including Verizon Maryland Inc., Verizon Virginia Inc., Verizon South Inc., and Verizon Washington D.C. Inc., are Telecommunications Carriers, Local Exchange Carriers, and Incumbent Local Exchange Carriers, as defined in 47 U.S.C. §§ 153(26), 153(44), 251 & 252(h),

---

[2] *See* Rcd., at 2078 *et seq.* (Lightwave Interconnection Agreement with Verizon Virginia Inc.); Rcd., at 2243 *et seq.* (Lightwave Interconnection Agreement with Verizon South Inc.); Rcd., at 2385 *et seq.* (Lightwave Interconnection Agreement with Verizon Maryland Inc.; Rcd., at 2437 *et seq.* (Lightwave Interconnection Agreement with Verizon Washington, D.C. Inc.).

and are the dominant telecommunications service providers in the mid-Atlantic and Northeast regions of the United States, including Maryland, Virginia, and the District of Columbia.

Federal law and regulation obligate Verizon to provide telecommunications services to Lightwave, and requires that Verizon's "charges, practices, classification, and regulations" associated with such services be "just and reasonable."[3] Further, "any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."[4] Federal law requires that Verizon, among other obligations, interconnect with Lightwave, provide Lightwave with nondiscriminatory access to Verizon network elements, and "negotiate in good faith the terms and conditions" of such access and interconnection.[5] Federal law prohibits Verizon from making "any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services" in connection with its provision of these services to Lightwave and prohibits Verizon from subjecting Lightwave "to any undue or unreasonable prejudice or disadvantage."[6] Federal courts have jurisdiction over these issues.[7]

Lightwave is a Telecommunications Carrier, Local Exchange Carrier and Competitive Local Exchange Carrier, as defined in 47 U.S.C. §§ 153(26), 153(44), 251 & 252, that provides telecommunications services to both small business and residential customers within Maryland, Virginia, and the District of Columbia, by purchasing certain telecommunications elements and

---

[3] 47 U.S.C. § 201(a). As the Wholesale Agreement also requires compliance with New York law, we note that the New York Public Service Law contains identical requirements. *See* N.Y. Pub. Serv. L. § 91(1).

[4] 47 U.S.C. § 201(b); *see also* N.Y. Pub. Serv. L. § 91(1).

[5] 47 U.S.C. §§ 251, 252.

[6] 47 U.S.C. § 202(a); *see also* 47 U.S.C. § 202(c) (imposing a penalty for any knowing violation of § 202(a)); N.Y. Pub. Serv. L. § 91(2)(a) & (3).

[7] *See, e.g.,* 47 U.S.C. § 207.

services from Verizon on a wholesale basis. Lightwave competes directly with Verizon for customers.

In accordance with 47 U.S.C. §§ 251 and 252, and the Federal Communications Commission ("FCC") regulations promulgated thereunder, Lightwave entered into jurisdiction-specific Interconnection Agreements in Maryland, Virginia, and the District of Columbia. These Interconnection Agreements remain in effect. Following a generic FCC ruling that modified Federal rules governing access to a key network element (network switching),[8] Lightwave was forced to also enter into the Wholesale Agreement to continue to serve over 10,000 of its customers.

The Wholesale Agreement (including its Dispute Resolution clause) was drafted by Verizon, and Verizon deemed the key terms non-negotiable. The parties entered into the Wholesale Agreement, effective as of July 1, 2005. The Wholesale Agreement states that "[t]he construction, interpretation and performance of this Agreement shall be governed by (a) the laws of the United States of America and (b) the laws of the State of New York, without regard to its conflicts of laws rules"  (hereinafter "Applicable Law") (Section 8.1). The Wholesale Agreement requires Verizon and Lightwave to remain in compliance with Applicable Law in the course of performing the Wholesale Agreement (Section 8.2). The Interconnection Agreements contain an identical provision (Section 4).

The Wholesale Agreement provides that Verizon and Lightwave "shall promptly notify the other [p]arty in writing of any governmental action that limits, suspends, cancels, withdraws, or otherwise materially affects, the notifying [p]arty's ability to perform its obligations under this

---

[8] *See* FCC WC Docket No. 04-313, CC Docket No. 01-338, *In the Matter of Unbundled Access to Network Elements Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, Order on Remand (adopted Dec. 15, 2004), at ¶¶ 199 *et seq.*

Agreement" (Section 8.3). Thus, in drafting and executing the Wholesale Agreement, Verizon acknowledged that it remained subject to Federal laws and regulations in performing its obligations thereunder.

## III.    THE BILLING DISPUTE

As part of its obligation under Federal law to provide elements and services on a nondiscriminatory basis,[9] Verizon is obligated to bill its wholesale customers, such as Lightwave, on a "complete, accurate, and timely" basis.[10] Under the Wholesale Agreement, Verizon bills Lightwave on a monthly basis via electronic billing, through which Verizon claims amounts due from Lightwave. Verizon's bills to Lightwave allocate each claimed charge to a specific item. By analyzing each itemized charge, Lightwave can determine whether the billed charge is accurate or erroneous.

The Wholesale Agreement and the Interconnection Agreements provide that if any Verizon claim, or charge, is subject to a good faith dispute, Lightwave shall give written notice to Verizon of the amount it disputes through the Verizon-mandated dispute process. The Verizon-mandated dispute process is set forth in the Interconnection Agreements and in the Wholesale Agreement (*See, e.g.,* Wholesale Agreement, Section 13).

---

[9] 47 U.S.C. §§ 201, 202, 251, 252.

[10] FCC WC Docket No. 02-384, *In the Matter of Application by Verizon Maryland Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Bell Atlantic Communications (d/b/a Verizon Long Distance), NYNEX Long Distance Company (d/b/a Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc., for Authorization to Provide In-Region, InterLATA Services in Maryland, Washington, D.C., and West Virginia*, Memorandum Opinion and Order (adopted Mar. 18, 2003) at ¶ 26; *see also* FCC CC Docket No. 01-138, *In the Matter of Application of Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. for Authorization to Provide In-Region, InterLATA Services in Pennsylvania*, Memorandum Opinion and Order (adopted Sep. 19, 2001) at ¶ 13.

Over the period January 1, 2004 to June 30, 2006 (the "Dispute Period"), Lightwave, recognized that many items were erroneously billed by Verizon, and each month disputed those items in accordance with the Verizon-mandated process, and paid the remainder of each bill in full. Since the disputes were not resolved by Verizon through the internal Verizon review process, Lightwave escalated many of these Verizon billing claims to arbitration pursuant to the Verizon-mandated process (*See, e.g.,* Wholesale Agreement, Section 18).

## IV.    THE ARBITRATION

Section 18 of the Wholesale Agreement provides that all disputes, including billing disputes, shall be submitted to arbitration with the American Arbitration Association ("AAA"). While Section 18 provides that any such arbitration shall be administered according to the AAA's Commercial Arbitration Rules, those rules are *explicitly modified* to include the following very specific requirements:

(i)     the arbitration shall be held in a location mutually acceptable to the Parties, and if the Parties fail to agree, the location shall be in the Borough of Manhattan, State of New York;

(ii)    the arbitrator shall be licensed to practice law;

(iii)   the arbitrator shall conduct the arbitration as if it were a bench trial and shall use, apply and enforce the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the law of the State of New York, without regard to its conflict of laws rules, including the laws and decisions pertaining to enforcement and interpretation of contracts;

(iv)    except for breaches related to Confidential Information and as otherwise provided in Section 27.6, the arbitrator shall have no power or authority to make any award that provides for special, indirect, incidental, consequential, reliance, exemplary, punitive or like damages, including damages for lost revenues, profits or savings or other commercial or economic loss, even if the person whose liability is excluded by this Section has been advised of the possibility of such damages;

7

(v)     the arbitrator shall control the scheduling so that the hearing is completed no later than thirty (30) days after the date of the demand for arbitration; and

(vi)    the arbitrator's decision shall be give within five (5) days thereafter in summary form that states the award, without written decision, which shall follow the plain meaning of this Agreement, the relevant documents, and the intent of the parties.

On September 29, 2006, Lightwave submitted a number of unresolved billing disputes to arbitration through a demand for arbitration ("Demand"), in accordance with Section 18 of the Wholesale Agreement.[11]    Lightwave's Demand sought final resolution of the open disputes, totaling $2,854,316.37, that had remained unresolved from the Dispute Period.[12]

On October 19, 2006, Verizon filed an answer ("Answer"), through which Verizon claimed an additional $796,703.40 over and above the Verizon claims already submitted through the Lightwave Demand.[13]    Lightwave timely filed a Reply to Verizon's Answer, denying Verizon's further claims.[14]    According to the parties' submissions, therefore, the total amount in dispute in the arbitration was $3,651,019.77.

Pursuant to the Wholesale Agreement and the applicable AAA rules, John A. Bonello, Esq. was appointed as the arbitrator ("Arbitrator").[15]    The arbitrator issued a Scheduling Order on November 1, 2006.  Pursuant to that Order, which stated that "all deadlines will be strictly enforced," the parties were to pre-file all exhibits and supplemental exhibits by November 15 and 17, 2006, respectively.  The parties each exchanged exhibits on those dates, with Lightwave

---

[11] Rcd., at 1.

[12] Rcd., at 1-11C.

[13] Rcd., at 29-35.

[14] Rcd., at 62-69.

[15] Rcd., at 50-52.

filing LWV Exhibits 1-13, and Verizon filing VZ Exhibits 1-119. Between November 18, 2006, and January 29, 2007, Verizon produced over 30 additional Exhibits.

The arbitration hearing began on November 20, 2006, and was continued on November 21, 2006, January 2, 2007, January 3, 2007, January 4, 2007, January 29, 2007, and January 30, 2007. The record produced during the hearing included testimony from one Lightwave witness and six Verizon witnesses. Both parties also filed proposed award charts, and one round of post-hearing briefs. The complete arbitration record is submitted herewith.

## V.    THE AWARD

On April 27, 2007, the Arbitrator issued the Award. Therefore, the accompanying motion is timely filed under 9 U.S.C. §§ 9, 10 and 12.

The Award, written in summary chart form, placed $1,078,623.81 in Lightwave's column and $1,846,386.75 in Verizon's column.[16] Thus, the Award directly addresses $2,925,010.56 of the $3,651,019.77 in Verizon claims submitted to arbitration, and denies to Verizon its remaining claims of $726,009.21.

The Award sets out a procedure for payment of amounts due. First, Verizon is required to "issue all credits due to Lightwave under this Award."[17] Then, Lightwave is required "to make any payments due to Verizon, net of credits received from Verizon."[18]

Verizon and Lightwave both agree that the award of $1,078,623.81 to Lightwave was proper, and Verizon has already posted bill credits in this amount to Lightwave's account in

---

[16] Rcd., at 4708-14. The "totals" in the Award are not an accurate summation of the itemized awards.

[17] Rcd., at 4708.

[18] *Id.*

accordance with the Award.  This part of the Award should therefore be confirmed and enforced, to the extent necessary (to, *e.g.*, prevent any subsequent reversal of credits by Verizon).

However, following release of the Award, Lightwave and Verizon disagreed as to their respective obligations to give effect to the remaining portions of Award.  The parties attempted, unsuccessfully, to resolve those disagreements.[19]

The parties disagree as to whether Verizon has completed its obligation to "issue all credits due to Lightwave" under the Award.  As explained below, the Award requires Verizon (as Verizon now concedes) to provide an adjustment to the Lightwave account for the Verizon claims submitted to arbitration and not awarded to Verizon ($726,009.21).[20]  Most of this amount relates to late fees, of which approximately $300,000.00 was conceded by Verizon at the conclusion of the hearing and $208,537.30 was denied to Verizon in the Award.[21]  Verizon acknowledges that "if the arbitration award reflects that, for a particular . . . issue, Lightwave does not owe any amount to Verizon, then no corresponding late fee should be awarded."[22]  This part of the Award should therefore be confirmed and enforced, and the resulting adjustment of $726,009.21 applied to the Lightwave account.

---

[19]  Copies of emails and letters evincing such attempts are included as Exhibit E to Klein Affidavit.

[20]  On July 5, 2007, Verizon filed a Motion to Confirm the Award in the Circuit Court of Fairfax County in the State of Virginia ("Fairfax Motion").  Rcd., at 4715 to 4721.  This Verizon Fairfax Motion does not demand the $726,009.21 of Verizon's claims that were submitted to arbitration but denied to Verizon by the Award, stating instead that the Award "conclusively resolved all the billing disputes between Lightwave and Verizon that were the subject of the arbitration" and requires Lightwave to "pay Verizon $1,846,386.75."  Verizon's Fairfax Motion notes the statement in the Award that "all claims not expressly granted in the . . . Award were denied."

[21]  Of the total late fees in dispute, $873,344.73, Verizon claimed just $574,014.81 in its proposed award chart, conceding the remainder.  Of the amount claimed, Verizon was awarded $365,477.51, meaning the balance of $208,537.30 was denied to Verizon.

[22]  Verizon Position Statement, Exhibit G to Klein Affidavit.

The parties also apparently disagree as to the "amount of payments due to Verizon [from Lightwave], net of credits." To effectuate this portion of the Award, there must be (1) issuance of all credits by Verizon to the Lightwave account and (2) a subsequent determination of amounts due from Lightwave to Verizon, *net of credits*. This part of the Award should also be confirmed and enforced, for without such action the Award cannot be a "final, mutual, and definite" award.[23]

As to several of the disputed items placed in the Verizon column on the Award chart, vacatur pursuant to section 9 of the Arbitration Act (9 U.S.C. § 10) is appropriate. The Arbitration Act provides that a court may vacate an arbitration award where the arbitrator exceeded his powers,[24] the award was procured by fraud or undue means,[25] there is evidence of arbitrator partiality,[26] or where the arbitrator engaged in misbehavior prejudicial to the rights of a party.[27] Federal Courts may also vacate an arbitration award in cases where the arbitrator has demonstrated a manifest disregard of the law,[28] or the award is against public policy.[29] The specific items, identified in Exhibit B to the Klein Affidavit, should be vacated in accordance with the Arbitration Act, as discussed in Section IX, below.

---

[23] *See* 9 U.S.C. § 10(a)(4), providing for vacatur of an award on that basis.

[24] 9 U.S.C. § 10(a)(4).

[25] 9 U.S.C. §10(a)(1).

[26] 9 U.S.C. §10(a)(2).

[27] 9 U.S.C. §10(a)(3).

[28] This non-statutory ground was first articulated by the Supreme Court in *Wilko v. Swan.* 346 U.S. 427 (1953).

[29] *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29 (1987), *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818 (2d Cir. 1997), and *Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199,* 116 F.3d 41 (2d Cir. 1997).

## VI.     JURISDICTION AND VENUE

This Court has federal question jurisdiction over this action under 28 U.S.C. §1331.  The

parties are regulated entities under Federal law and are subject to the requirements of the Federal

Communications Act of 1934, as amended by the Federal Telecommunications Act of 1996, 47

U.S.C. §§ 151 *et seq.*  The Interconnection Agreements and Wholesale Agreement require each

party to remain compliant with Federal law in their performance thereunder.

The Wholesale Agreement contains a jurisdiction provision favoring court located in

New York County.  The agreement states that "Verizon and Lightwave each irrevocably

consents to the personal and subject matter jurisdiction of the courts located in the Borough of

Manhattan, State of New York to the extent necessary to give effect to or to enforce the

provisions of this Agreement, and waives any defense of lack of jurisdiction, improper venue or

inconvenient forum."  (Section 8.1.)

Venue in the Southern District of New York also is proper.  As outlined above, the

parties have consented to this venue.  Further, the agreement also provides for enforcement of an

arbitrator's award in any court having jurisdiction over the parties.  (Section 18.)

## VII.    THE PARTIES ARE IN AGREEMENT THAT THE AWARD
##          SHOULD BE CONFIRMED AND ENFORCED IN RELEVANT PART

Both Verizon and Lightwave agree that portions of the Award are final and should be

judicially enforced.  These portions of the Award – the affirmative award of $1,078,623.81 to

Lightwave and the denial of Verizon claims in the amount of $726,009.21 – may therefore be

enforced in accordance with section 9 of the Arbitration Act.[30]

---

[30] 9 U.S.C. §9.  The specific items awarded to Lightwave and denied to Verizon are identified in
Exhibit A to the Klein Affidavit.

Verizon has moved to enforce the Award in these two respects, already posting to the Lightwave account the affirmative award of $1,078,623.81.[31] This portion of the Award is split, roughly, between disputes that Verizon conceded during the arbitration and contested items awarded to Lightwave. This part of the Award should therefore simply be confirmed herein.

Verizon similarly acknowledges that the claims denied to it by the Award can no longer be demanded by Verizon. As the billing party, making the claim for payment, Verizon's payment demands can only be confirmed by an affirmative award, and billed amounts denied to Verizon must therefore be removed from Lightwave's account. In other words, since the Verizon claims that were denied had already been billed, adjustments would now have to be issued to the Lightwave account to effectuate their removal.

Indeed, the Verizon Fairfax Motion makes clear Verizon's view that full enforcement of the Award would equal payment to Verizon of $1,846,386.75.[32] This amount now claimed by Verizon equals the sum of the individual items awarded to it, and unmistakably excludes the additional $726,009.21 that had been demanded by Verizon in the arbitration but which was not awarded to it, consistent with prior Verizon statements.

The Verizon Fairfax Motion asserts, with appreciable clarity, Verizon's belief that the Award requires Lightwave to "pay Verizon $1,846,386.75" and that the Award "conclusively

---

[31] Rcd., at 4715-21 (refer specifically to ¶¶ 4, 11, 12, 24 and 26). Despite being keenly aware of the substantial defects in the awards to Verizon, and the existence of disagreements as to its implementation (and therefore the likelihood of this appeal and request for partial vacatur), Verizon moved in an improper forum for enforcement of the Award. At a Calendar Conference held at Verizon's request on July 6, 2007, the Fairfax Court postponed further consideration of the premature motion until August 9, 2007, in recognition of and deference to the unexpired statutory appeal period and the issues of improper venue and forum. With the filing of this appeal, Lightwave will so notify the Fairfax Court and request that court to dismiss the Verizon motion.

[32] See Id.

resolved all the billing disputes."[33]  Verizon's Fairfax Motion contains numerous references to the amount to which Verizon believes it is entitled under the Award, and all exclude the $726,009.21 previously claimed by Verizon.[34]  Verizon even notes the statement in the Award that "all claims not expressly granted in the Arbitration Award were denied."[35]  Enforcement of the Award, as sought by Verizon, would therefore properly require adjustments to the Lightwave account for this $726,009.21 billed by Verizon but no longer claimed as due and owing by Verizon.

Significantly, Verizon and its counsel were well aware of Lightwave's position that amounts not affirmatively awarded to Verizon, as the billing party, must be credited to Lightwave's account in order to reconcile and correct past billings.[36]  Verizon did not, however, raise that issue at all in its Fairfax Motion, conclusively acknowledging that Verizon's failure to meet its burden of proof as to these items means that its payment demands for those specific items must now be withdrawn.  As such, account adjustments are all that remains to give effect to this portion of the Award.[37]

Verizon's recent acknowledgement simplifies this appeal proceeding, permitting the Court to focus on the gross errors reflected in certain of the items that were affirmatively

---

[33] *Id.* (refer specifically to ¶¶ 11-12).

[34] *Id.* (refer specifically to ¶¶ 4, 11, 12, 24 and 26).

[35] *Id.* (refer specifically to ¶ 12); Rcd., at 4709.

[36] *See* Exhibit E to the Klein Affidavit. ("Verizon simply cannot continue to claim dollar amounts denied to it in the Arbitration.  The clearest example of this (but certainly not the only one) is Late Fees, where Verizon's claim for over $500,000.00 in previously-billed Late Fees was rejected.  The reference in the Award to claims denied can only logically reference Verizon's claims for payment since Verizon had already billed Lightwave for the items placed in dispute, and sought recovery of those charges in the arbitration – not vice-versa."); *see also* Rcd., at 4706-08.

[37] This amount, totaling $726,009.21, has not yet been posted to Lightwave's account.

14

awarded to Verizon in the Award.  Should Verizon attempt to distance itself from its prior

pleading, perhaps perceiving some benefit in obfuscation, Lightwave requests that the issue be

summarily determined and this portion of the Award lawfully and logically enforced.[38]

Finally, the Award instructs the parties that "any payments" from Lightwave are to be

"net of credits received from Verizon."[39]  Despite the clarity of this instruction, Verizon has

insisted on additional payments from Lightwave prior to Verizon posting all applicable credits

due from the Award.[40]

Verizon's position also flatly ignores the fact that Lightwave has overpaid its account

with Verizon.  In fact, Lightwave had already paid to Verizon, prior to the arbitration,

$1,425,214.39 of the $3,651,019.77 in disputed charges submitted by the parties to the

arbitration.[41]  This overpayment has gone unrecognized (ignored) by Verizon to date, but must

be properly acknowledged as an account credit in order to implement the Award.  As a result,

confirmation and enforcement of this provision is necessary and respectfully requested.

## VIII.    IDENTIFICATION AND DESCRIPTION OF ITEMS AND ISSUES SUBJECT TO MOTION TO VACATUR

As noted above, Verizon's bills to Lightwave allocate each claimed charge to a specific

item identified by an industry standard code.  By analyzing each itemized charge against the

---

[38] Any attempt by Verizon to disavow its Fairfax Motion to Enforce would not only directly contravene the positions already taken by Verizon in that filed pleading, but also equate to an affirmative declaration by Verizon as to the existence of grounds for vacatur of those portions of the Award remaining in dispute (*i.e.,* the $726,009.21 and $1,846,386.75) pursuant to section 10(a)(4) of the Arbitration Act.

[39] Rcd., at 4708.

[40] Verizon letter demanding $1,846,386.75 from Lightwave, under threat of service disruption, attached as Exhibit E to Klein Affidavit.

[41] This figure has been confirmed by an independent review performed by W.C. Saddler & Co., P.A., Certified Public Accountants, which is annexed as Exhibit D to Klein Affidavit ("Accountant's Review").

rates included in the agreements, Lightwave can determine whether the billed charge is accurate or erroneous, and pay or dispute the charge or service. Accordingly, the parties' disputes are item-specific, and therefore the Award is broken down into item-specific amounts.

As detailed in Section IX of this Memo, several of these item-specific awards (specified in Exhibit C to Klein Affidavit) are in direct conflict with the parties' Wholesale Agreement and Interconnection Agreements, the submissions of the parties, and Applicable Law, and these awards must therefore be vacated under the Federal Arbitration Act and other applicable law. The following provides an overview of several specific items whose award to Verizon must, in particular, be vacated.

## A.    Local Usage

Local Usage refers to end office local switching of customer calls, which is billed on a "minutes of use" basis.[42]  The vast majority of the disputes over Local Usage concern charges billed for services in Virginia following the issuance of an FCC order.[43]

The FCC established a rate of $0.00 for local switching in Virginia, making the new rate retroactive to August 1, 2002.  Verizon issued an Industry Letter on December 3, 2004, confirming that rate change.[44]

Over the period of retroactive application of the rate in Virginia, Lightwave made payments to Verizon at the rates charged by Verizon in Virginia.[45]  Verizon's Post Hearing Brief, however, asserted that "Lightwave should be compelled to pay Verizon the amounts that it

---

[42] *See* Rcd. at 2058, 2191-92.

[43] Rcd., at 2480 (providing the billing detail for these charges).  The FCC acted in the stead of the Virginia State Corporation Commission, after the Virginia Commission declined to act.  *See* 47 U.S.C. § 252(e)(5), authorizing the FCC to preempt a state commission which declines to act.

[44] Rcd., at 3789-90.

[45] *See* Rcd., at 4615-17, 4665-66.

has been withholding."[46]  Here, Verizon falsely asserted that the amounts disputed by Lightwave were also being withheld by Lightwave, and improperly requested an award for those amounts.[47]

While a small portion of the disputed charges for Local Usage related to overcharges billed in Maryland and District of Columbia, Verizon took the same position for these charges – conceding that the charges were billed in error but asserting that it had already posted credits to Lightwave's account.

Therefore, the only open issue for Local Usage in the arbitration was whether there remained credits to be posted to Lightwave's account to rectify Verizon's erroneous bills.  As such, the issue is very similar to the Group II disputes, described below.

### B.     Interoffice Dedicated Transport (ULY3X)

Interoffice Dedicated Transport provides the hard-wire connections (transport) between Verizon network offices.   These circuits are dedicated to a particular carrier customer. Interoffice Dedicated Transport remains an Unbundled Network Element ("UNE"), as defined by 47 U.S.C. §§ 153(29) & 251(c), under Federal Communications Commission ("FCC") regulations.[48]   Rates and charges for each UNE are established by state public utility commissions pursuant to the FCC's mandated ratemaking methodology.[49]   In turn, Verizon is required to provide UNEs to competitors, such as Lightwave, at cost-based rates.[50]   State public

---

[46] Rcd., at 4666.

[47] *Id.*

[48] 47 C.F.R. § 51.319(e).

[49] *See AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366 (1999).

[50] *See* C.F.R. § 51.503.

utility commissions therefore have set a specific cost for Interoffice Dedicated Transport when provided to a competitor as a UNE.[51]

The parties' Interconnection Agreements and Wholesale Agreement require Verizon to provide Interoffice Dedicated Transport at the rates specified by the relevant state public utility commissions.[52] Since these set charges are based on cost, they are applicable only where the UNE is ordered by the carrier and actually, physically provided as envisioned by the state commission when it evaluated that cost and set Verizon's rate for providing that UNE.[53]

### C.    Group II Disputes

The items labeled "Group II" disputes are Disputes that were conceded by Verizon during the Verizon-mandated dispute resolution process set forth in the Wholesale Agreement and the Interconnection Agreements.[54]

Lightwave escalated these Disputes to arbitration since Verizon never posted the credits in accordance with its concession that the amounts were billed in error.[55]

With limited exceptions, Verizon did not contest whether the amounts were billed in error during the arbitration; Verizon only argued it had already posted credits to Lightwave's account and owed no further adjustments.[56]

Therefore, the only open issue as to these items during the arbitration was whether Verizon had already posted the appropriate credits.

---

[51] *See* 47 U.S.C. § 252(d)(3).

[52] Rcd., at 2059, 2192.

[53] *See* C.F.R. § 51.503 *et seq.*

[54] Rcd., at 2034-36.

[55] Rcd., at 1-11.

[56] Rcd., at 4659-707.

### D.    Late Fees

Late Fees are defined by the parties' agreements – by Section 9 of the Interconnection Agreements and Section 13 of the Wholesale Agreement. Under these agreements, amounts in dispute are not due. Lightwave submitted $702,846.62 of Verizon billed claims for Late Fees to the arbitration.[57] Since Verizon's bills to Lightwave do not state or otherwise indicate which payments Verizon considers "late" or to which amounts they are supposedly associated, there is no way to determine how or why the Late Fees are being billed.[58]

Aside from the charges that Lightwave disputes and properly withholds in accordance with the agreements, Lightwave's payments to Verizon throughout the Dispute Period were timely, and the Lightwave/Verizon account was in fact overpaid during the Dispute Period. Thus, one must assume that Verizon was claiming Late Fees on items that were validly in dispute and/or on amounts already paid.

In its Demand for arbitration, Lightwave noted that the parties' agreements did not permit Late Fees to be billed on disputed items. Verizon argued to the contrary. Verizon claimed a further $170,498.11 in Late Fees, associated with the further claims set forth in the Answer,[59] which Lightwave further denied. Thus, the total amount of Late Fees in dispute was $873,344.73.

Lightwave's proposed award chart sought removal of the $873,344.73 in Late Fees improperly billed to its account,[60] while Verizon claimed $574,014.81,[61] thereby conceding at least the difference between the two.

---

[57] Rcd., at 1-11.

[58] *See, e.g.*, 924-26.

[59] Rcd. at 33, 4591, 4597.

[60] *See* Rcd, at 4590-93; *see also* Rcd., at 4597.

### E.    Platform Loops (R2HX1)

Platform loop refer to the loop or link that connects a Verizon end office to a particular customer location, when purchased together with other elements.    Verizon acknowledges overcharging Lightwave for the platform loop.    Prior to the arbitration, Verizon informed Lightwave that an amount of $282,973.52 was being "resolved in [Lightwave's] favor" to correct for these overcharges for the "Platform Loop" element.[62]    Lightwave, in reliance on that information from Verizon, filed this issue as a Group II dispute, and sought only the credits acknowledged by Verizon to be due as described above.[63]

Lightwave therefore did not pre-file any substantive evidence on the underlying dispute. However, during the arbitration Verizon changed its position once it realized that Lightwave had relied upon Verizon's previous concession and did not file any underlying data.    Verizon argued that the statement Lightwave relied upon was misinterpreted by Lightwave, attempting to show that the charges were still in dispute.[64]

However, Verizon did not support its claim, providing no data or evidence to justify that the charges were correct or that the amount of credit previously calculated was not the correct amount.

---

[61] *See* Rcd., at 4597.

[62] Rcd., at 4414-19.

[63] Rcd., at 1-11.

[64] *See* Rcd., at 4667.

### F.    Miscellaneous Usage

Miscellaneous Usage refers to certain operator services, such as call completion and directory assistance services. Thus, this category of charges is made up of several subcategories of underlying charges.[65]

Lightwave had disputed these charges during the Dispute Period in accordance with the parties' agreements, and Verizon raised Miscellaneous Usage as a further claim in its Answer.[66] Significantly, Verizon used settlement data provided by Lightwave as the sole basis for this particular claim. Lightwave demonstrated the impropriety of these charges during the arbitration.[67]

## IX.    THE AWARD SHOULD BE VACATED IN PART

While two major parts of the Award are, as noted above, enforceable on consent of the parties, several of the items in the Award are completely at odds with the Communications Act, the Arbitration Act and other applicable law. These items, identified above and listed on Exhibit C to the Klein Affidavit, must respectfully be vacated.

Verizon is clearly pleased with the Award, moving to enforce even prior to the expiration of the statutory appeal period and pressuring Lightwave to accept the outcome not only through the Fairfax Motion but through threats of service embargoes and service terminations, and filings with State Public Service Commissions as well.[68] These measures appear to be tacit recognition of the fragility of the Award as it relates to the items granted to Verizon, and in particular their susceptibility to vacatur on appeal. While the amounts awarded to Lightwave, both affirmatively

---

[65] *See* Rcd, at 4635-4638, 4683.

[66] Rcd., at 32, 35.

[67] Rcd., at 62-69.

[68] *See, e.g.*, Exhibit F to Klein Affidavit.

and through denial of Verizon claims, are appropriate for confirmation, upon consent,[69] the portions of the Award now being appealed by Lightwave herein are likewise subject to review and vacatur in accordance with the grounds set forth in the Arbitration Act.[70]

The Federal Arbitration Act provides that a court may vacate an arbitration award where the arbitrator exceeded his powers,[71] the award was procured by fraud or undue means,[72] there is evidence of arbitrator partiality,[73] or where the arbitrator engaged in misbehavior prejudicial to the rights of a party.[74] Federal Courts may also vacate an arbitration award in cases where the arbitrator has demonstrated a manifest disregard of the law[75] and where the award violates established public policy.[76]

---

[69] *See supra*, Section VII.

[70] While Lightwave has set forth the grounds for vacatur in this Memorandum of Law, we respectfully request that the Court utilize the procedural mechanisms at its disposal in order to effectuate a complete review of the issues raised herein.

[71] 9 U.S.C. § 10(a)(4). The parties' Agreement and "the submission by the parties determines the scope of the arbitrators' authority." *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991); *see also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

[72] 9 U.S.C. §10(a)(1).

[73] 9 U.S.C. §10(a)(2).

[74] 9 U.S.C. §10(a)(3).

[75] This non-statutory ground was first articulated by the Supreme Court in *Wilko v. Swan,* 346 U.S. 427 (1953). In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court suggested that this test applies to an arbitrator's failure to apply governing law rather than the arbitrator committing an error of law. 473 U.S. 614 (1985).

[76] The public policy ground is also a common law doctrine, based on the premise that a court can refuse to enforce a contract that is found on a cause of action based upon an immoral or illegal act. *See United Paperworkers International Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 43 (1987); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997); and *Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997).

**A.    The Arbitrator Violated the Arbitration Act by Exceeding or Imperfectly Executing His Power In Several Material Respects**

The Federal Arbitration Act provides that a court may vacate an arbitration award where the arbitrator exceeded his power, or "so imperfectly executed [his power] that a mutual, final, and definite award upon the subject matter submitted was not made."[77]    In this instance, Verizon's ongoing demands for payment of amounts that are either (a) illegal, or (b) not owed to Verizon demonstrate that the arbitrator exceeded his authority and portions of the Award, as written, are not mutual, final and definite within the meaning of the Arbitration Act.

**1.    The Arbitrator Exceeded His Authority**

**a.    *The Award Permits Verizon to Demand Unlawful Charges in Violation of the Federal Communications Act and the Agreement.***

The Federal Arbitration Act provides that a court may vacate an arbitration award "where the arbitrators exceeded their powers."[78]    An arbitrator's power is primarily drawn from the terms of the parties' Agreement, and the Arbitration Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[79] "Where...the parties have agreed to abide by [particular] arbitration rules, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA."[80]    "By permitting the courts to '*rigorously enforce*' such agreements according to their terms...[courts]

---

[77] 9 U.S.C. § 10(a)(4).

[78] 9 U.S.C. § 10(a)(4).

[79] *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (further stating that the FAA's principal purpose is to "ensur[e] that private arbitration agreements are enforce according to their terms").

[80] *Volt Information Sciences*, 489 U.S. at 478.

give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA."[81]

Here, Section 8.2 of the parties Wholesale Agreement requires that Verizon "shall remain in compliance with Applicable Law in the course of performing this Agreement." The Agreement defines "Applicable Law" as "(a) the laws of the United States of America and (b) the laws of the State of New York[.]"[82] "All disputes relating to this Agreement shall be resolved through the application of such laws."[83] Moreover, the Dispute Resolution provisions of the Agreement provide that "the arbitrator shall conduct the arbitration as if it were a bench trial and shall use, apply and enforce the Federal Rules of Evidence, the Federal Rules of Civil Procedure, the laws of the State of New York."[84]

The Agreement therefore imposed very specific limitations on the arbitrator's authority, requiring the arbitrator to issue an award that ensures compliance with federal and New York law.

The Communications Act, as amended by the Telecommunications Act of 1996, contains the central tenets of telecommunications regulation in the United States. The Act states, *inter alia*, that any "charge [or] practices" of Verizon or other common carrier that is unjust or reasonable is "declared to be unlawful."[85]

---

[81] *Volt Information Sciences*, 489 U.S. at 478 (*emphasis added; citation omitted*).

[82] Rcd., at 2032.

[83] *Id.*

[84] Rcd., at 2039-40.

[85] 47 U.S.C. §201.

Both Federal and New York law also fundamentally require Verizon to disclose all charges for the services it offers.[86] This requirement serves the policy goals of ensuring just and reasonable rates,[87] preventing discrimination and undue preference,[88] and clearly identifying rates and providing customers with the information necessary to determine if they have been properly billed.[89]

In the 1996 Telecommunications Act, Congress mandated the unbundling of the public telecom network into its component parts, to enable competition in a market that was considered a natural monopoly.[90]  Rates and charges for each of these elements of the network are established and billed individually, on a component-by-component basis.[91] The "market-opening provisions of section 251(c)(3) . . . require that incumbent LECs make elements of their networks available on an unbundled basis to new entrants at cost-based rates, pursuant to standards set out in section 251(d)(2).[92] This painstaking process takes place in each State, using the methodology

---

[86] 47 U.S.C. § 203(a); N.Y. Pub. Serv. L. § 92(1).

[87] *See* 47 U.S.C. § 201; N.Y. Pub. Serv. L. § 91(a).

[88] *See* 47 U.S.C. §§ 202; 251, 252(i); N.Y. Pub. Serv. L. § 92(2)(a) & (3).

[89] See 47 U.S.C. § 203(a) (requiring rates to be "open to public inspection"); N.Y. Pub. Serv. L. § 92(1) (providing a requirement identical to the Federal one).

[90] *See, e.g.*, 47 U.S.C. § 251(c)(3).

[91] FCC CC Docket No. 96-98, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order (adopted Aug. 1, 1996), at ¶¶ 226 *et seq.*; *see also* 47 U.S.C. § 251(c)(3).

[92] FCC WC Docket No. 04-313, CC Docket No. 01-338, *In the Matter of Unbundled Access to Network Elements Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, Order on Remand (adopted Dec. 15, 2004), at ¶ 1 ("FCC UNE Remand Order").

established by the FCC.[93]  This is done so that each wholesale provider will be reimbursed for the cost of providing each element.[94]

It is therefore fundamental that each wholesale provider, such as Verizon, charge only for elements actually ordered and provided, and not for any elements not so provided.  The charge for each element must be as set by the relevant State Public Utility/Service Commission.[95]

Where as here there exists a cost-based rate requirement and a *prima facie* case is made as to the lack of a "cost justification for the challenged practice," the FCC concludes that, "in order to prevail" and demonstrate that the charges were just and reasonable under section 201(b) of the Communications Act, the billing carrier is "required to produce some cost justification for its practice."[96]  If that carrier fails "to meet this burden of production, offering no substantive cost rationale whatsoever for the challenged practice," a violation of section 201 will be found.[97]

The Award, however, would improperly permit Verizon to recover $477,810.55 in charges for an item Verizon itself admits it does not provide, and that Lightwave did not order, and awards money to Verizon for another item that has a statutory rate of $0.00.  Since the charging and collection of such amounts is legally prohibited, the Award is not only condoning

---

[93] *See AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366 (upholding the FCC's decision to preempt state rules over telecommunications ratemaking methodology for unbundled network elements).

[94] 47 U.S.C. §252(d) provides in relevant part that the "just and reasonable rate for network elements for purposes of

   subsection (c)(3) of [section 251]

      (A) shall be--
         (i) based on the cost . . . of providing the . . . network element, and
         (ii) nondiscriminatory, and
      (B) may include a reasonable profit.

[95] *See, e.g.*, 47 U.S.C. 252.

[96] FCC 01-380, *In the Matter of Graphnet, Inc. v. AT&T Corp.*, Memorandum Opinion and Order (adopted Dec. 21, 2001) at 1145.

[97] *Id.*

certain illegal behavior by Verizon but is also, if left uncorrected, promoting the continuation of such illegal billing and collection activity in violation of both Federal and New York law These errors warrant a full review of the award, even under the toughest of standards.

When Lightwave acquires a new customer, it may provide service over its own network, or purchase elements or groups of elements from Verizon. In the latter case, Lightwave pays for the network elements or components it orders and receives. When Lightwave orders network elements under the Wholesale Agreement, it is purchasing a switch port on a Verizon central office switch and the local loop (phone line) associated with that switch port, thereby connecting the customer to the public switched telephone network.[98]

Verizon is however, by its own admission, also charging Lightwave in some instances, for another network element – Interoffice Transport – that Verizon is **not** providing and that Lightwave did not order.[99]   In fact, the provision of **Interoffice** Transport is a factual impossibility under the circumstances at issue, since *all* of the network elements purchased by

_____

[98] The Wholesale Agreement took effect July 1, 2005, following the FCC's determination that the network switch was no longer a network element subject to mandatory unbundling. Nonetheless, Verizon continued to make it available under the Agreement, using the existing State-set rates plus an additional monthly recurring charge. *See* Wholesale Agreement, at section 1 ("the Services offered by Verizon under this Agreement (the "Services") shall consist of local circuit switched dialtone services, comprised of DS0 Loops and Local Circuit Switching (including shared transport and SS7 signaling facilities used in conjunction with such switching), that provide all the features and functionalities of Verizon's DS0 UNE-P services offerings previously made available to Lightwave under its interconnection agreements with Verizon and through certain Verizon state tariffs.").

[99] Rcd., at 1152-54. Interoffice Transport, identified by the uniform ordering code ULY3X, remains an Unbundled Network Element under the Act and FCC Rules. Interoffice Transport is aptly named, providing connections (transport) between two distinct Verizon network offices. Prior to the arbitration, Verizon did acknowledge that it was improperly billing Lightwave for this phantom element, and agreed to credit Lightwave $17,389.86 for those charges.

Lightwave for the disputed items are contained within one single and the same Verizon central office. [100]

Verizon's bills openly show – and Verizon readily admits – that transport is not being provided between two different offices.[101] Instead, each of these charges is manufactured, forced onto the Lightwave invoice by a false input for local loop mileage or "distance." Since there is only one office involved (not two), there is no "distance" between Verizon central offices, and Verizon therefore inputs the smallest increment its system will accept – one mile[102], in order to generate a charge.

While Verizon has attempted to confuse the issue, by asserting that Lightwave is being charged for a "functionally equivalent service," Verizon's argument is self-incriminating as violative of the Act. First, since there exists no such "service," under law or the parties' agreements, it was not possible for Lightwave to order or for Verizon to provide it. Second, Verizon would under its theory be charging Lightwave the equivalent of a non-tariffed/non-scheduled rate, in violation of Federal and New York law.[103] While Verizon will likely attempt to confuse the issue again, it cannot escape the fact, as confirmed by its own witness

---

[100] Rcd., at 2480 (Lightwave produced 703 examples in the month of June 2006 alone that unequivocally demonstrate that there was no Dedicated Interoffice Transport being provided by Verizon).

[101] Rcd., at 1152-54, 2480.

[102] Rcd., at 2480.

[103] *See* 47 U.S.C. § 201; N.Y. Pub. Serv. L. § 91(a); *American Tel. and Tel. Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 224 (stating that it is illegal for a regulated carrier to charge a rate not provided for in a tariff); *WorldCom Technologies, Inc. v. ACS Telecom, Inc.*, 2001 WL 1537696 (stating that "a breach of contract claim that seeks to enforce non-tariffed rates or privileges is barred").

testimony,[104] that no Interoffice Transport is being ordered, or provided, and that any charge for such an element is therefore prohibited under applicable law and the parties' agreements.

Furthermore, the established rate for Interoffice Transport that Verizon is assessing to Lightwave is a cost-based rate set by the state commission. The established rate, which is incorporated into the parties' agreement,[105] lawfully applies only when Verizon actually provides *Interoffice* Transport – transport over a physical connection between two different Verizon offices.[106] Verizon admits that it is not actually providing the element that was analyzed and priced, and asserts that only a very small percentage of the charges to Lightwave relate to instances where Verizon is actually providing the element and incurring the costs assumed in the ratemaking.[107]

Since applicable federal and state law prohibit Verizon from "demanding or collecting" unlawful charges, Verizon is legally prohibited from demanding payment of the phantom Interoffice Transport (ULY3X) charges here. Verizon acknowledges this fundamental principle, on the record, agreeing that it is not "authorized to bill for an interoffice facility it was not actually providing."[108]

Remarkably, however, the Award would permit Verizon to demand $477,810.55 for this very item, in violation of both federal and New York law. Since enforcement of this part of the Award would allow Verizon to violate applicable law – and therefore the Agreement – this part of the Award results from the arbitrator exceeding his authority and must be vacated.

---

[104] Rcd., at 1152-54.

[105] *See, e.g.*, Rcd., at 2059, 2069, 2072, 2076, 2207, 2464 (showing the rates for Interoffice (IOF) Transport).

[106] 47 U.S.C. § 203(a); N.Y. Pub. Serv. L. § 92(1).

[107] Rcd., at 1172.

[108] Rcd., at 1152.

<strong><em>b.    The Arbitrator Cannot Order the Reversal of Credits Approved<br>by Regulatory Agencies or Award Verizon for Erroneously Billed<br>Charges or Charges That Exceed The Lawful Rate</em></strong>

There is an entire category of items in the Award which conflict not only with the law, but with basic common sense as well. The entirety of the Dispute items submitted to the arbitration within the Group II category were conceded by Verizon during the regular business-to-business dispute resolution process as having been erroneously billed. The dollar amounts and the corresponding credits with tracking numbers were already identified by Verizon as being owed to Lightwave, but through Verizon's own inaction, were never posted to the account.[109] Since the credits were not duly posted, Lightwave escalated this $855,181.21 to the arbitration to have the matter firmly resolved.

Verizon asserted that it had posted some of these Group II and Local Usage credits to the account and owed no further adjustments. With limited exceptions (the two largest Group II items) Verizon did not contest whether the billed amounts were erroneously charged and did not therefore seek payment from Lightwave for these items. Rather, Verizon admitted, in the arbitration, that it had billed in excess of the authorized rate, and admitted that payments and charges must be credited back to the Lightwave account.[110] Verizon's only defense was that the company already posted the credits to the account, sometimes through what Verizon terms an internal "system spin" to correct the billing error. As a result, the only open issue was whether Verizon had actually posted the credits due.

Thus, the scope of the arbitrator's authority was clearly limited by the parties' submissions to (1) an affirmative award resulting in the posting of the credits to the Lightwave

---

[109] *See* Rcd., at 1961-2015. (identifying the Verizon tracking numbers that confirm such resolution).

[110] Rcd., at 653-54, 710-21, 3789-90, 4665-66.

account, based on the evidence and Verizon's admissions of erroneous billing, or (2) a finding in favor of Verizon indicating that the credit was given and no other adjustments were warranted. In other words, a finding in Verizon's favor would mean a zero in the appropriate columns on the Award Chart, indicating that the matter was already closed and the account should stand as is with no further adjustments.

The arbitrator, however, gave affirmative monetary awards to Verizon for several of the Group II items, and Local Usage, thereby reversing previously acknowledged credits due and owing Lightwave and clearly exceeding the scope of his authority as determined by "the submission by the parties."[111]  Since such an Award could not be made in an arbitration where the parties' submissions excluded that outcome, and are in agreement that the Verizon billings were erroneous and therefore unlawful, the arbitrator was clearly acting in excess of his authority in awarding these amounts to Verizon.  As such, this portion of the Award must therefore be vacated.[112]

With regard to the Local Usage issue, Verizon did not dispute in the arbitration that Lightwave had in fact already paid the charges to Verizon.  After these payments were made, however, the rate for local switching in Virginia was reduced by the Federal Communications Commission to zero ($0.00),[113] and that rate was applied retroactive to August 1, 2002.[114]  The rate of zero is set forth in the parties' Wholesale Agreement.[115]

---

[111] *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991); *see also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987), and *Volt Information Sciences*, 489 U.S. at 478.

[112] *See* Exhibit C for a listing of the specific items and associated amounts.

[113] *See, e.g.*, Rcd., at 4665-66.

[114] Rcd., at 3789-90 (showing old "Billed Rate" for Unbundled Local Switching as ranging from $0.0010130 to 0.0026430 and "New Rate" as $0.00).

[115] Rcd., at 2072, showing "N/A" in rate column.

While Verizon agreed that charges already paid by Lightwave must be credited back to Lightwave, to undo the overpayment, Verizon offered no record evidence whatsoever that this adjustment had occurred, and, therefore, the arbitrator could only have instructed Verizon to post the bill adjustment and credit that Verizon acknowledged was due. The Award, however, got this entirely backward, and actually placed the $206,823.32 in the *Verizon* column. Verizon interprets this as entitling it to demand payment from Lightwave in this amount, in clear contradiction of the applicable FCC Order setting the rate for this element to **$0.00**.[116] Thus, even if Verizon *could* prove that it actually credited Lightwave for Lightwave's previous overpayment, forcing Lightwave to now pay a second time through the Award would be illegal since no charge can be due where the applicable rate is zero.

As evidenced by Verizon's own Industry Letter, the rate of $0.00 is to be applied across the industry.[117] Therefore, Verizon's charge to Lightwave of any other rate would be discriminatory, and thereby also in violation of Applicable Law.[118]

These facts notwithstanding, Verizon now interprets the Award to require Lightwave to pay these indisputably unlawful charges.[119] Verizon's ongoing demands for these charges constitute additional violations of both the federal Communications Act and New York law.[120]

---

[116] *See Id.*

[117] *Id.*

[118] *See* 47 U.S.C. §§ 201, 202, 251, 252; N.Y. Pub. Serv. L. §§ 92, 97.

[119] *See* Verizon Fairfax Motion (Rcd. 4715-21), Verizon Demand and Threat of Service Termination and Verizon Notice to the Maryland Public Service Commission (Exhibit E). The discrepancy in interpretation also evinces the lack of a mutual, final and definite award, providing thereby the grounds for vacation under section 10(a)(4) of the Act, addressed elsewhere herein.

[120] 47 U.S.C. §§ 201, 202, 251, 252; N.Y. Pub. Serv. L. §§ 92, 97.

Since the award to Verizon of Local Usage and the Group II items constitute violations of federal and New York law, and the charges are explicitly prohibited by the parties' Agreement and an FCC Order, the arbitrator exceeded his authority in issuing this part of the Award and it must be vacated accordingly.

### c.    *The Arbitrator Exceeded His Authority by Awarding Late Fees to Verizon.*

The Federal Arbitration Act provides that a court may vacate an arbitration award where the arbitrator exceeded his powers,[121] the award was procured by fraud or undue means,[122] there is evidence of arbitrator partiality,[123] or where the arbitrator engaged in misbehavior prejudicial to the rights of a party.[124]   Unfortunately, all four statutory grounds apply with regard to the Late Fees awarded to Verizon in the Award, and provide grounds for its vacatur.[125]

### (1) *The Agreements Do Not Permit the Arbitrator to Award Late Fees.*

Neither the Interconnection Agreements nor the Wholesale Agreement permit the assessment of Late Fees on disputed amounts.   The Interconnection Agreements, which solely governed the parties' relationship for the first 18 of the 30 months of the Dispute Period, and continue in effect through the date hereof, provide that (1) the "billed Party shall pay by the Due Date all undisputed amounts," and (2) only "charges due to the billing Party that are not paid by the Due Date shall be subject to a late payment charge."[126]

---

[121] 9 U.S.C. § 10(a)(4).

[122] 9 U.S.C. §10(a)(1)

[123] 9 U.S.C. §10(a)(2).

[124] 9 U.S.C. §10(a)(3).

[125] The other grounds for vacatur of the Late Fee award are addressed in other sections, below.

[126] *See, e.g.*, Rcd., at 2089.

The Wholesale Agreement continued and restated that policy, providing that "no late payment charge shall apply to Disputed Amounts that are allowed by Verizon through the claims submission process."[127]  The Verizon policy reflected in these Verizon contract provisions was further clarified in the arbitration by Verizon witness Galunas,[128] and applied to these specific disputes in Verizon correspondence to Lightwave.[129]

In the Award, however, the Arbitrator violated these unambiguous terms of the Agreement in his award of late fees for billing disputes that were duly submitted by Lightwave, accepted by Verizon, and that remained unresolved due to Verizon's own failures for periods of up to 2 ½ years.[130]  The award disrespects the Agreement terms, in spite of the instruction in the Wholesale Agreement that the award shall "follow the plain meaning of [the] Agreement, the relevant documents, and the intent of the parties."[131]  Since the parties' Agreements so clearly prohibit the assessment of late fees in these circumstances, and the arbitrator's authority is defined by those Agreements, his award of Late Fees to Verizon is undoubtedly in excess of his authority and must respectfully be vacated.

---

[127] Rcd., at 2035.

[128] Rcd., at 758-68 (confirming that late payment charges would not accrue while the dispute remained open and unresolved).

[129] Rcd., at 1894-906.

[130] Indeed, the testimony of Verizon witnesses Corticada and Costanza demonstrated the abject failure of Verizon to follow its own documented dispute resolution processes and timelines. *See, e.g.*, Rcd., at 947-81, 1367-81, 3002-13.  Permitting Verizon to profit from its own failures, by collecting 18% annual interest on unresolved disputes, as the arbitrator's award would do, is irrational and also violative of applicable law.

[131] Rcd., at 2039-40.

***(2) The Arbitrator Failed to Apply the Law when he
Awarded Late Fees to Verizon, Particularly where the
Account is Overpaid by Lightwave***

The arbitrator's authority is circumscribed directly by the Agreement, which requires the
arbitrator to apply Federal and New York law.[132]  Under the Communications Act, and the New
York Public Service Law, all charges by Verizon must be just and reasonable.[133]  Even assuming
the existence of contractual grounds for the assessment of late fees, which as discussed below
would be incorrect, the awarding of late fees on accounts that are overpaid would be patently
unjust and unreasonable. The arbitrator could not have issued this award had he applied relevant
law.

Lightwave's account with Verizon is in fact overpaid, in that Lightwave had already paid
to Verizon, for the Dispute Period, $1,425,214.39 of the $3,651,019.77 in disputed charges
submitted by the parties to the arbitration (that Lightwave was entitled to withhold pending
resolution).[134]  The Award, however, clearly fails to account for these prior payments made by
Lightwave.

This prior Lightwave overpayment ($1,425,214.39) represents almost the entire total
amount awarded to Verizon (once the Late Fee award is itself removed from the total).  As a

---

[132] Rcd., at 2032, 2039-40.

[133] 47 U.S.C. §§ 201, 202; N.Y. Pub. Serv. L. §§ 92, 97.

[134] This figure has been confirmed by an independent review performed by W.C. Saddler & Co.,
CPA, which is attached to Klein Affidavit as Exhibit D ("Accountant's Review").    That
Accountant's Review verifies that Lightwave paid $8,292,726.09 of the $11,103,070.69
demanded by Verizon during the Dispute Period.  Accounting for $584,539.22 in subsequent
adjustments posted by Verizon for past billing errors to Lightwave accounts leaves an open
balance of $2,225,805.38.  Since there were bill Disputes of $3,621,860.31 at issue in the
arbitration, the difference between the Dispute amount and the open balance on the account
($1,425,214.39) reflects payments made by Lightwave for a good portion of the erroneously
billed charges.

result, since Lightwave has already paid nearly all of the Verizon Award as it currently stands, the assessment and award of Late Fees on that already-paid portion is in excess of the arbitrator's authority.

### d.     The Arbitrator Exceeded His Authority by Not Conducting the Arbitration in Accordance with the Agreement.

An arbitrator's power is primarily drawn from the terms of the parties' agreement. The Supreme Court has found that Congress's goal in enacting the Federal Arbitration Act was "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."[135]     The Federal Arbitration Act therefore "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[136] Indeed, where "the parties have agreed to abide by [particular] arbitration rules, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA."[137]

The parties' Wholesale Agreement contains extraordinary requirements governing the conduct of the arbitration – mandating for example that it be conducted as a bench trial as opposed to an arbitration, and that the Federal Rules of Evidence and Civil Procedure be applied and enforced.[138] While it is not known why Verizon would mandate a bench trial arbitration, as opposed to a bench trial itself, Verizon's intent in so doing at least removes most (if not all) of the arguments normally raised in opposition to court review of arbitration award appeals. Where

---

[135] *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

[136] *Volt Information Sciences*, 489 U.S. at 478; *see also Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117 (2d Cir. 1991) (stating that "[w]here...the parties have agreed to abide by [New York law], enforcing [that law] according to the terms of the agreement is fully consistent with the goals of the FAA").

[137] *Volt Information Sciences*, 489 U.S. at 478.

[138] Rcd., at 2039-40.

Verizon specified a bench trial, it can have little objection to appellate review of portions of the resultant Award.

Since the parties' Agreement defines the scope of the arbitrator's authority, the failure of the arbitrator to honor the very specific requirements of the Agreement provides and indisputable basis for vacatur of those portions of his Award to which there are objections. While Lightwave fully relied upon those specific provisions of the Agreement upon submission of the Disputes to arbitration, and expected that they would be enforced and was prepared to proceed accordingly, the arbitrator's conduct quickly proved otherwise.

The Wholesale Agreement requires that "the arbitrator shall control the scheduling so that the hearing is completed no later than thirty (30) days after the date of the demand for arbitration." (§18)  Lightwave filed with the AAA the Dispute Resolution provisions of the Wholesale Agreement,[139] that contain that requirement, and the AAA Notice of Initiation referenced that time restriction.[140]    The AAA also notified the potential arbitrators of that limitation, and sought their availability for compliance.  Arbitrator Bonello represented that he was available on October 26, 30, 31, and November 2, 2006, was appointed, and initially scheduled the hearing to begin on October 30, 2006.[141]  The arbitrator then improperly granted a Verizon request for delay, over Lightwave objection.[142]

The arbitrator thereafter violated almost every other requirement set forth in the parties' Wholesale Agreement for conduct of the arbitration.  Despite issuing a Scheduling Order which

---

[139] Rcd., at 3.

[140] Rcd., at 13-15.

[141] Rcd., at 46, 53.

[142] Amended Scheduling Order, Rcd., at 60.  Lightwave promptly served Verizon with notice that Verizon was in breach of the Wholesale Agreement, for its failure to comply with the Dispute Resolution requirements, on October 31, 2006.  Rcd., at 58.

stated that "all deadlines will be strictly enforced," the arbitrator permitted Verizon to produce, over Lightwave objection, an additional 30 Exhibits (encompassing thousands of pages) after the November 17, 2006 deadline established in that Order. The arbitration hearing did not begin until November 20, 2006, and was continued only sporadically before concluding on January 30, 2007.

In fact, on January 4, 2007, after Lightwave had begun its rebuttal and the hearing was set to conclude, Verizon announced (3 months into a 30 day arbitration) that it was not prepared to proceed – and the arbitrator actually adjourned the hearing to allow Verizon more time to prepare its cross examination, further testimony and even more exhibits.[143] When the hearing finally resumed four weeks later, the arbitrator permitted Verizon to produce new direct exhibits and introduce new testimony, even on issues that had already been concluded.[144]

Throughout the arbitration hearing, the arbitrator failed to apply and enforce the Federal Rules of Evidence as required by the Wholesale Agreement. The arbitrator repeatedly permitted the introduction of evidence that was clearly inadmissible, lacked foundation, and included billing and account data that Verizon witnesses were totally unable to validate and confidential settlement data that Lightwave had previously produced to Verizon prior to the initiation of the arbitration.[145]

The arbitrator similarly failed to apply and enforce the Federal Rules of Civil Procedure, as required by the Wholesale Agreement. While Verizon asserted a claim in its Answer for $371,994.24 for Miscellaneous Usage, the Verizon witness called specifically to address that one

---

[143] *See,* Rcd., at 1481-1509.

[144] Rcd., at 1695-738. The gross impropriety of Verizon's conduct is addressed separately below.

[145] *See, e.g.*, Rcd. at 658-680, 723-750, 1696-97, 1702-04, 1713-20.

issue was unable to articulate any basis for such charges to Lightwave, nor any of the underlying categories of charges that made up this rather large claim.[146]  The arbitrator baselessly rejected the Lightwave motion to dismiss the claim.  The arbitrator then permitted Verizon, over objection, to introduce new, direct evidence on rebuttal (based on Lightwave settlement data), through a new witness – and then awarded Verizon $90,939.59.

The foregoing are unfortunately just a few of the many examples contained in the record of the manner in which the arbitrator exceeded his authority.  There can be no doubt that (a) the arbitrator exceeded his authority by failing to conduct the arbitration in accordance with the parties' agreement, (b) that Lightwave has been prejudiced and damaged as a direct result of the arbitrator's misconduct, and (c) that the Award to Verizon should therefore be vacated pursuant to section 10(a)(3) of the Arbitration Act.

## 2.    Arbitrator Imperfectly Executed His Power Such That There is Lacking a Final and Definite Award

An Award may be vacated where the arbitrator "so imperfectly executed [his powers] that a mutual, final, and definite award upon the subject matter submitted was not made."[147]  The general rule, applying this statutory standard, provides that "an arbitral determination is not final unless it conclusively decides every point required by and included in the submission of the parties."[148]  The award is "mutual, definite and final" only where it "resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is

---

[146] Rcd., at 1352-84.

[147] 9 U.S.C. §10(a)(4).

[148] *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).

necessary to finalize the obligations of the parties."[149]  Several portions of the Award issued in

the arbitration below clearly fail to meet this standard, both on their face and as confirmed in

correspondence between the two parties following issuance of the Award.[150]

Indeed, the Second Circuit has specifically determined that an award is not final and

definite where the parties could not agree on the rights granted under the award, stating that

"[c]ourts will not enforce an award that is incomplete, ambiguous, or contradictory."[151]  "The

purpose of arbitration is to resolve disputes, not to create new ones. An award which does not

fulfill this purpose is unacceptable."[152]  Thus, the Court vacated an award where there was no

"clear and compelling interpretation of the award."[153]

Similarly, where an award appealed to New York State Supreme Court, New York

County, left open the issue of what amount was "due and owing," the court found that "a

determination of any amounts owed requires more than mere arithmetical computations."[154]

Concluding that "[a]n award must be clear enough to indicate unequivocally what each party is

required to do," the court appropriately vacated the award.

The Award here does not resolve disputes, and instead affirmatively creates new ones.

The Award not only permits existing Verizon claims to fester, but also provides fodder for new

---

[149] *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc.*, 102 F.3d 677 (2d Cir. 1996) [quoting *Dighello v. Busconi*, 673 F. Supp. 85, 90 (D. Conn. 1987), *aff'd*, 849 F.2d 1467 (2d Cir. 1988) (*internal quotations omitted*)].

[150] *See* Exhibit E to Klein Affidavit.

[151] *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, Intern. Union, United Auto., Aerospace and Agr. Implement Workers of America*, 500 F.2d 921 (2d Cir. 1974) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

[152] *Id.*

[153] *Id.*

[154] *Pyramid Prod., Inc. v. Nat. Telefilm Assoc., Inc.*, 40 Misc.2d 67, 243 N.Y.S.2d (N.Y. Sup. 1963).

payment claims that clearly violate applicable law. If left unresolved here, further litigation is inevitable – and has in fact already begun with Verizon's submission of the issues to the Maryland Public Service Commission, where Lightwave would be forced to now respond. Since all of these claims submitted for resolution by arbitration were not firmly and finally resolved by the arbitrator, as required by the parties' agreement and submissions, they are therefore subject to vacatur under section 10(a)(4) of the Arbitration Act.

The award of Late Fees, Local Usage, Platform Loop, Platform Port, Interoffice Transport and the Group II items to Verizon fails to sufficiently determine each issue such that no further litigation would be necessary to finalize the obligations of the parties, since the illegality of those awards must be challenged.[155] It is therefore respectfully requested that these portions of the Award be vacated.

As noted above, the arbitrator derives his power primarily from the parties' agreement and their submissions. The agreements require that the arbitrator consider and apply governing law in resolving the disputed items. For there to be firm and final resolution, the Award must be compliant with applicable law. The award of these items to Verizon, however, clearly violates of applicable law which, as also discussed earlier, requires that all charges by Verizon be just and reasonable, nondiscriminatory, cost-based, and in accord with the Agreements.[156]

In light of Verizon's improper demands for affirmative payment on these items of the Award, there remain fundamental disagreements that undercut any finality and definiteness. Under the parties Wholesale Agreement, the arbitration is designed to firmly resolve billing disputes that remain unresolved after completion of the Verizon dispute process. Despite

---

[155] See ConnTech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc., 102 F.3d 677.

[156] See 47 U.S.C. § 201; N.Y. Pub. Serv. L. § 91(a).

Lightwave's good faith efforts to implement the Award in a lawful manner, such efforts have instead confirmed that a mutual, final and definite award on several items is clearly lacking.[157]

Verizon's post-Award demands for payment of these illogical and illegal amounts confirms that the arbitrator exceeded his authority,[158] and that the Award is not final and definite. As a result, these parts of the Award must, respectfully, be vacated.

**B.    The Arbitrator Engaged in Misbehavior Prejudicial to Lightwave by Awarding Amounts to Verizon Without Having Sufficient Evidence to Make an Informed Decision**

The Federal Arbitration Act provides that a court may vacate an arbitration award "where the arbitrators were guilty of any…misbehavior by which the rights of any party have been prejudiced."[159]  With regard to several of the items awarded to Verizon, the arbitrator did not have sufficient evidence before him that could possibly support such findings.[160]  These awards are therefore subject to vacatur under the Arbitration Act.

In *Areca Inc. v. Oppenheimer & Co., Inc.*, the court held that while arbitrators "need not compromise the speed and efficiency" of the arbitral proceeding, *"arbitrators must have before*

---

[157] Given the fact that the Lightwave account with Verizon is actually overpaid, the presumption that Verizon would want resolution of these issues and a reconciliation of the account may indeed be unsupportable.

[158] *See* Verizon Fairfax Motion, Verizon Maryland Public Service Commission filing, and Threat of Service Termination.  Exhibit F to Klein Affidavit.  Verizon appears to be of the belief that it can pressure Lightwave into payment of these illegal amounts through these various measures.

[159] 9 U.S.C. § 10(a)(3).

[160] In response to the arbitrator's request that the parties address the burden of proof issue, Verizon responded with the obtuse assertion that Lightwave has the burden as to the disputes it escalated to the arbitral process.  This is plainly unsupportable under both applicable law and these specific facts.  Verizon retains both the burden of production and the ultimate burden of proof as to each Dispute, regardless of which party actually escalated a given issue to arbitration, which is merely the final stage of the Verizon dispute resolution process.  While the arbitrator did not disclose his conclusion on the subject, his awarding of claims to Verizon in the absence of proof reveal that he either ignored or entirely misapplied the law, or exceeded his authority by failing to apply the law to the facts as required by the Agreement.

*them enough evidence to make an informed decision.*"[161]   Since the arbitrator here lacked such

evidence, his findings in favor of Verizon regardless of that fact are indisputably prejudicial to

Lightwave, and as such constitute arbitral misbehavior within the meaning of the statute

sufficient to warrant vacatur.

### 1.    Late Fees

The arbitrator's grant to Verizon of the "right" to assess late fees runs directly contrary to

the evidence in the record.  The Award must follow "the plain meaning of [the] Agreement, the

relevant documents, and the intent of the parties."[162]   As noted above, neither the Interconnection

Agreements nor the Wholesale Agreement permit the assessment of Late Fees on disputed

amounts, providing that (1) the "billed Party shall pay by the Due Date all undisputed

amounts,"[163] (2) only "charges due to the billing Party that are not paid by the Due Date shall be

subject to a late payment charge,"[164] and (3) "no late payment charge shall apply to Disputed

Amounts that are allowed by Verizon through the claims submission process."[165]   That plainly

stated "intent of the parties" was confirmed by the only Verizon witness to substantively address

the issue.[166]   There being no record evidence supporting any right to even assess late fees, let

alone collect them here, the actions of the arbitrator in awarding late fees to Verizon constitute

arbitral misbehavior within the meaning of the Act.

---

[161] 960 F. Supp. 52, 55 (S.D.N.Y. 1997) (*emphasis added*).

[162] Rcd., at 2039-40.

[163] *See, e.g.*, Rcd. at 2089.

[164] *Id.*

[165] Rcd., at 2035.

[166] Rcd., at 758-68 (confirming that late payment charges would not accrue while the dispute remained open and unresolved).

The lack of any right aside, the arbitrator's award of late fees is equally improper since he assessed such fees on accounts that were overpaid by Lightwave. As the Accountant's Review confirms,[167] the Lightwave/Verizon open account balance at the close of the Dispute Period ($2,225,805.38) is far less than the total amount of disputes submitted by the parties to the arbitration ($3,621,860.21), meaning that the amount submitted to arbitration included nearly $1.4 million in billing disputes for which Lightwave had already made payment to Verizon. Under any interpretation of the evidence, late fees cannot be assessed on paid accounts.

In addition, the arbitrator erroneously awarded actual dollar amounts to Verizon for items (in Group II) where the only open issue was whether Verizon had posted a credit to the Lightwave account to correct an admitted error.[168] While it was Verizon that improperly associated late fees with Group II items, on its "addendum to Post-Hearing Brief – to which Lightwave had no reply and therefore no opportunity to correct,[169] the arbitrator erred in relying on any such extra-record information. Given the amount of late fees awarded to Verizon, it appears that the Arbitrator compounded his other errors by then also applying late fees on these Group II amounts for which no payment can be due.

Finally, the arbitrator's actual calculation of an award to Verizon of $365,477.51 in Late Fees is itself entirely unsupported by the record. Even assuming for purposes of argument that Verizon could assess late fees on disputed balances and could assess them on paid accounts, there is no evidence in the record that could support any actual calculation of the Award amounts.

---

[167] Exhibit D to Klein Affidavit.

[168] Rcd., at 4708-14.

[169] Rcd., at 4707.

Verizon produced no documentation, authority, or other support for any calculations, failing even to identify when any particular disputed charge might have actually begun to accrue late fees. In fact, Verizon failed to produce its Director of Wholesale Billing, who was duly identified as a witness by Lightwave, presenting instead through one catch-all witness only the most rudimentary calculations – which were themselves based solely on Lightwave's arbitration exhibits.

The actions of the arbitrator, as highlighted above, constitute arbitral misbehavior prejudicial to Lightwave, within the meaning of the Act. As such, Lightwave respectfully requests the vacatur of the Late Fee awards on that basis.

### 2.    Platform Loop (R2HX1)

The arbitrator failed to have sufficient information to enable an informed decision as to whether Verizon had correctly or incorrectly calculated the amount of the account adjustment due to Lightwave for Verizon's admitted overcharges for local loops. Verizon had informed Lightwave, prior to the arbitration, that the amount of $282,973.52 was being "resolved in [Lightwave's] favor"[170] in order to correct previous overcharges. The only other item on the Verizon dispute resolution spreadsheet that was also identified as being resolved in Lightwave's favor (SP1UM) was conceded by Verizon in the arbitration.[171]

Lightwave, in reliance on that Verizon resolution, filed this issue within Group II, as a resolved issue, pending posting of the stated credit. Lightwave therefore did not pre-file substantive evidence on the underlying dispute.

---

[170] Rcd., at 4414-19.

[171] Rcd., at 994-95, 4414-19, 4599.

During the arbitration, however, Verizon changed its position and asserted that Verizon would credit only $67,784.82 of the $282,973.52 previously acknowledged and represented. Verizon then produced several new exhibits (throughout the hearing), each presenting a different version of the August 23, 2006, spreadsheet, purporting to show a pop-up note in Microsoft Excel, that does not show on any versions printed from Excel itself but supposedly reveals itself if the computer mouse curser hovers over a specific location.[172]

Verizon did not produce any billing records or other data to support its new calculation of the amount of the billing error. There was likewise no testimony or evidence as to the underlying nature of the dispute or the amounts involved or to what period the credits were applicable.[173]

Notwithstanding the complete lack of any evidence sufficient to meet its burden to demonstrate that Verizon had fully credited the amount of the admitted overcharge, the arbitrator summarily accepted the Verizon figure and actually affirmatively awarded Verizon $215,188.80. Since the arbitrator's award has no basis in evidence, and Lightwave was denied any fair opportunity or due process to contest the issue, the arbitrator's conduct must certainly be considered improper and prejudicial to the rights of Lightwave and vacated accordingly.

---

[172] Verizon then produced screenshots showing the purported note. Rcd., at 326, 983-995, 4512-19.

[173] The Arbitrator requested that Verizon provide support for its alleged posting of the $67,000 in credits, which Verizon failed to do. Rcd., at 1868-70.

**C.    Verizon Procured Its Awards Through Fraud and/or Undue Means**

The Federal Arbitration Act provides that an award may be vacated "where the award was procured by corruption, fraud, or undue means."[174]  Verizon's conduct during the arbitration was reprehensible, warranting vacatur of the award it obtained in accordance with the Act.[175]  While Verizon's actions clearly taint the entirety of its Award, several of the items awarded to Verizon clearly stand out having been procured by fraudulent and/or undue means, including Local Usage, Miscellaneous Usage, Platform Loop (R2HX1), Interoffice Transport (ULY3X), CABS and Late Fees.[176]  While Lightwave will produce Affirmations and whatever other supporting information as may be helpful to the Court's consideration of this issue upon further direction from the Court, we provide herein an overview of the issue.

As an initial matter, Verizon failed entirely to honor the contract terms governing the conduct of the arbitration.  From the initiation of the arbitration, Verizon failed to proceed under the schedule mandated by its own Wholesale Agreement arbitration clause.  Verizon repeatedly

---

[174] 9 U.S.C. § 10(a)(1).

[175] To the extent permissible, Lightwave reserves the right to seek sanctions against Verizon and its counsel. *See* FRCP § 11.

[176] Verizon's actions with respect to Late Fees in particular provides an example of how the company obtained the award through fraudulent or undue means.  Verizon failed to produce the one witness with knowledge of this topic despite Lightwave's designation, failed to timely introduce exhibits that would support Verizon's contentions in any way, included a new exhibit with its brief three months after the close of the hearing (to which it knew Lightwave could not reply), flatly misstated facts in connection with the Lightwave/Verizon account balances, and launched unfounded personal attacks on Lightwave's sole witness and CEO.  Verizon in its Post Hearing Brief also misrepresented that the Wholesale Agreement "alone" governs late fees, notwithstanding the fact the Interconnection Agreements solely governed the parties' relationship for the first three-fifths of the Dispute Period and continue in effect through the date hereof.

sought to delay the proceeding, despite being advised that its conduct placed it in breach of the Wholesale Agreement.[177]

Verizon asserted, in its Answer, additional claims that Verizon knew or should have known were baseless, with the apparent attempt to distract or overwhelm the arbitrator and/or Lightwave.[178] Several of these new Verizon were ultimately conceded, while many others were awarded to Lightwave in whole or significant part.[179]

From the initiation of the hearing through its closure, Verizon improperly and impermissibly produced over 30 new Exhibits in violation of the Scheduling Orders and other established deadlines. Verizon even attached an Exhibit to its Post-Hearing Brief, upon which the arbitrator obviously relied in calculating and awarding Late Fees, knowing that Lightwave had no opportunity to respond. In a similar fashion, Verizon included assertions in its Post-Hearing Brief that had no support in the record and no other authoritative citation.

In an indisputable violation of the Federal Rules of Evidence, that Verizon's own Wholesale Agreement stated were to be applied and enforced, Verizon repeatedly produced and introduced into evidence data that Lightwave had previously provided to Verizon in furtherance of settlement.[180] Verizon produced and introduced Exhibits that it knew to be false and/or misleading, and others that it should have known to be so.[181] Verizon produced, for example, its

---

[177] Lightwave served Verizon with notice that Verizon was in breach of the Wholesale Agreement, for its failure to comply with the Dispute Resolution requirements, on October 31, 2006. Rcd., at 58.

[178] Verizon, for example, opposed Lightwave's request to bifurcate consideration of Verizon's Group V issues, which Verizon itself represented were distinct from the other billing disputes in the arbitration.

[179] *See* Group IV and Group V items on Exhibits A and B to Klein Affidavit.

[180] *See, e.g.*, Rcd., at 1696-97, 1702-04, 1713-1720.

[181] *See, e.g.*, Rcd., at 1012-19, 1264-301, 1369-84, 1689-94, 4045, 4059, 4082.

own retail customer data, which it represented as Lightwave wholesale account data in an attempt to show the posting of credits for Local Usage to the Lightwave account.[182]   Other Exhibits were completely lacking in authenticity or reliability.   In several instances, Verizon withdrew its own Exhibits as it became apparent that they lacked any authenticity or foundation.[183]

Verizon then, in its Post-Hearing Brief, made legally baseless arguments for items such as Interoffice Transport (ULY3X).   Indeed, even after Verizon admitted on the record that Verizon cannot bill "for an interoffice facility . . . it was not actually providing" and that Verizon is not "actually providing the transport piece between one central office and another central office,"[184] Verizon counsel still fabricated an argument designed to fool an arbitrator not familiar with telecom law.   This subterfuge worked, as Verizon was awarded $477,810.55 – despite not only the admissions noted above but even the further Verizon assertion, brought out by Verizon's own counsel on re-direct, that Verizon was actually providing transport for only "$28,000" of the $477,810.55 Verizon had claimed.[185]   Since Verizon clearly knows the law here, and the applicable facts, and yet still pushed arguments that have no legal basis, it cannot be permitted to profit from that malfeasance.

In a similar vein, Verizon specifically asked the arbitrator to award it money for Local Usage[186] despite it being well-established from Verizon's own evidence that the applicable rate

---

[182] *See, e.g.*, Rcd., at 1546-51, 3791-4018.

[183] *See, e.g., Rcd.,* at 1012-19.

[184] Rcd., at 1152-54.

[185] Rcd., at 1172.   [The transcript incorrectly indicates that the particular question was asked by counsel for Petitioner (Klein), instead of Respondent's own counsel (Corcoran)].

[186] Rcd., at 4666 (Verizon Post-Hearing Brief).

was $0.00 during the entire Dispute Period. Verizon even asked for $82,361.73 in "Late Fees" on this item, that it is required under Federal law to provide to Lightwave at no cost.[187]

Finally, Verizon continued to assert a claim for Carrier Access Billing (CABS), after approving Lightwave's disputes. Verizon still pursues that claim today, despite now publicly admitting after the close of the arbitration in an industry letter that "Verizon has determined that certain Wholesale Advantage customers in Pennsylvania and Maryland have not been billed the correct rate(s)" for CABS.[188]

While it is unlikely that a Court has seen the level and breadth of misconduct exhibited in this arbitration, prior decisions have indeed found that vacatur is appropriate under the Act where a party has procured and award by fraud or undue means.[189] Since the arbitrator not only overlooked Verizon's fraudulent and improper actions, but actually permitted the fruits thereof into evidence and then obviously relied upon such evidence in making significant awards in Verizon's favor, the awards to Verizon must respectfully be vacated in accordance with the Act.

### D.    The Awards to Verizon Should be Vacated For Their Manifest Disregard of the Law and Violation of Public Policy

The vacatur of an arbitration award is appropriate where the arbitrator's decision constitutes a "manifest disregard of law."[190] The Supreme Court has determined that vacatur of such an award is proper where, as here, the arbitrator simply failed to apply governing law.[191] Therefore, the arbitrator's failure to apply the Communications Act and New York law in the

---

[187] *See, e.g.*, Rcd., at 4453.

[188] Exhibit H to Klein Affidavit.

[189] *See, e.g., Karppinen v. Karl Keifer Mach. Co.*, 187 F.2d 32 (2d Cir. 1951); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988); *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 161 F.3d 314 (5th Cir. 1998).

[190] *See Wilko v. Swan*, 346 U.S. 427 (1953).

[191] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

awards to Verizon provides grounds for vacatur not only under the statutory basis that he exceeded his authority, discussed above, but on this non-statutory basis as well.

In *Halligan v. Piper Jaffray, Inc.*, the Second Circuit determined that vacatur of an award under the "manifest disregard of law" doctrine may be used to "effectively vindicate" the challenger's statutory rights.[192]  Such "vindication" is indeed necessary here, where the awards to Verizon constitute direct attacks on Lightwave's right to be free from, *inter alia*, unjust, unreasonable, discriminatory and non-cost based charges.[193]  Instead of applying such Federal law to the issues in dispute, the arbitrator in making his awards to Verizon clearly sanctions Verizon's violation of the governing statutes.

Similarly, in *George Watts & Son, Inc. v. Tiffany and Co.*, the Seventh Circuit held that the "manifest disregard" principle may apply in two situations that are both relevant to the instant matter:  where an arbitral order (1) "requir[es] the parties to violate the law," and (2) "does not adhere to the legal principles specified by contract, and [is] hence unenforceable under FAA § 10(a)(4)."[194]  Again, as noted earlier in this Memorandum, the awards to Verizon contain explicit violations of applicable law.  These awards, for example, require payment of charges for (1) Local Usage in excess of cost and in violation of the statutorily-set rate,[195] (2) Interoffice Transport also far in excess of cost (where element is not actually being provided) and in unjust and unreasonable manner,[196] Platform Loop (R2HX1), and other Group II items, where

---

[192] 148 F.3d 197 (1998).

[193] *See* 47 U.S.C. §§ 201, 202, 251 and 252.

[194] 248 F.3d 577, 581 (7th Cir. 2001).

[195] Cost determined to be de minimus, rate set at zero in accordance with section 252.

[196] Charges violative of 47 U.S.C. §§ 201, 202, 251 and 252.

overcharges admitted by Verizon are not credited back to account,[197] Miscellaneous Usage, where billed charges exceeded usage and/or were not authorized by parties' agreements,[198] and unauthorized and unsupportable Late Fees.[199]

As all of the foregoing items have been addressed previously in this Memorandum, Lightwave does not repeat all of the facts and arguments here but rather notes their application to vacatur of the Verizon awards under the manifest disregard of the law theory as well. As also discussed earlier, the parties' agreements specifically require application of Federal law, both generally and in the arbitration, which the arbitrator failed to do in finding for Verizon on these items. Therefore, under this theory, created to protect and vindicate the rights of parties such as Lightwave here, vacatur of the awards to Verizon is appropriate and respectfully requested.

Finally, permitting enforcement of the awards to Verizon would be violative of well-established public policy, and are therefore subject to vacatur on this basis as well.[200] In *Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199,* the Second Circuit held that an award may be vacated under this ground where (1) the decision "violates some explicit public policy that is well defined and dominant" and (2) this dominant policy is ascertainable "by reference to laws and legal precedents rather than general considerations of supposed public interest."[201]

---

[197] Charges and actions violative of 47 U.S.C. §§ 201, 202, 251 and 252.

[198] *Id.*

[199] *Id.*

[200] The public policy ground is also a common law doctrine, based on the view that a court can refuse to enforce a contract that is found on a cause of action based upon an immoral or illegal act. *See DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818 (2d Cir. 1997).

[201] 116 F.3d 41, 45 (1997) [*quoting United Paperworkers International Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 43 (1987)].

Significant public policy interests are implicated directly by the awards to Verizon in this arbitration. First, the Telecom Act of 1996 was passed and signed into law to create competition in all telephone markets, specifically including the local telecom market to which competition was a generally foreign concept. To achieve that worthy goal, the Telecom Act contains very specific requirements, opening up the rate-payer funded networks on a cost-based basis to enable competitive entry. "One of the major goals of Congress in enacting the Telecommunications Act of 1996 (1996 Act) was to open local telecommunications service markets to competition. To that end, Congress imposed certain interconnection, resale, and network access requirements on incumbent local exchange carriers (LECs) through section 251 of the 1996 Act."[202]

The Telecom Act adopted the pre-existing statutory requirements of just, reasonable and nondiscriminatory access and applied them with particularity to the new mandates.[203]    The awards to Verizon violate the public interest goals of the Telecom Act.

The Act makes it unlawful for carriers such as Verizon to engage in discrimination with regard to its charges, practices or services, directly or indirectly, by any means or device.[204]    The "market-opening provisions of section 251(c)(3) [also] require that incumbent LECs make

---

[202] FCC UNE Remand Order, at ¶ 1.

[203] *See* 47 U.S.C. §§ 251, 252 and 271. Indeed, section 271 contains a significant trade-off for the incumbent Bell companies such as Verizon, enabling them to enter markets from which they had been foreclosed since the break up of the old AT&T/Bell system in 1984.

[204] See 47 U.S.C. §§202, 251.

elements of their networks available on an unbundled basis to new entrants at cost-based rates, pursuant to standards set out in section 251(d)(2).[205]  Verizon is specifically obligated to bill its wholesale customers, such as Lightwave, on a "complete, accurate, and timely" basis.[206]

FCC regulations under the Act specifically require Verizon and other incumbent carriers to provide competitive carriers with nondiscriminatory access to network elements, including the provision of "nondiscriminatory access to operations support systems ["OSS"] on an unbundled basis."[207]  This OSS access expressly includes the "***billing functions*** supported by an incumbent LEC's databases and information."[208]

The FCC has explicitly determined that this obligation requires Verizon to provide competitive carriers with *"complete, accurate and timely wholesale bills."*[209]  The FCC specifically found that Verizon's obligation to render accurate wholesale bills is critical to the

---

[205] FCC UNE Remand Order, at ¶ 1.

[206] FCC WC Docket No. 02-384, *In the Matter of Application by Verizon Maryland Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Bell Atlantic Communications (d/b/a Verizon Long Distance), NYNEX Long Distance Company (d/b/a Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc., for Authorization to Provide In-Region, InterLATA Services in Maryland, Washington, D.C., and West Virginia*, Memorandum Opinion and Order (adopted Mar. 18, 2003) at ¶ 26; *see also* FCC CC Docket No. 01-138, *In the Matter of Application of Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. for Authorization to Provide In-Region, InterLATA Services in Pennsylvania*, Memorandum Opinion and Order (adopted Sep. 19, 2001) at ¶ 13. As the party making a claim for payment, for items it claims to have provided, Verizon has the burden of proof.  Any award of money to Verizon in the absence of such proof also constitutes an excess of arbitral authority in violation of the Arbitration Act.

[207] 47 C.F.R. §51.319(g); *see also* Local Competition Order at ¶¶ 27, 523.

[208] *Id. (emphasis added).*

[209] *In the Matter of Application of Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. for Authorization to Provide In-Region, InterLATA Services in Pennsylvania*, FCC CC Docket No. 01-138 (adopted Sep. 19, 2001) at ¶ 13.

goals of the Telecom Act, since "inaccurate or untimely wholesale bills can impede a competitive LEC's ability to compete."[210]

The FCC cited four distinct ways in which inaccurate bills are anti-competitive:[211]

First, a competitive LEC must spend additional monetary and personnel resources reconciling bills and pursuing bill corrections.

Second, a competitive LEC must show improper overcharges as current debts on its balance sheet until the charges are resolved, which can jeopardize its ability to attract investment capital.

Third, competitive LECs must operate with a diminished capacity to monitor,

predict and adjust expenses and prices in response to competition.

Fourth, competitive LECs may lose revenue because they generally cannot, as a practical matter, back-bill end users in response to an untimely wholesale bill from an incumbent LEC.

*"Accurate, timely wholesale bills in both retail and BOS BDT formats thus represent a crucial component of OSS."*[212] These FCC conclusions with respect to the impact of Verizon's failure to bill accurately demonstrate the significant public policy issues implicated by the compounding errors in the awards to Verizon.

The failure of Verizon to bill accurately, and its billing of elements not actually provided, indubitably constitute violations of the Act clearly at odds with its goals. Since Verizon is granted the right in the Award to collect very significant charges despite its admissions of mis-billing for those very items,[213] to the detriment of competition and therefore telecom consumers,

---

[210]   *Id.* at ¶ 23.

[211]   *Id.*

[212]  *Id.* (*emphasis added*)

[213]  Platform Loop (R2HX1), Interoffice Transport (ULY3X), and Local Usage, for example. Verizon's own evidence admitted to grossly inaccurate billing, the levying of unjust and unreasonable charges, and indisputably unjust and unreasonable practices.

the awards to Verizon cannot be considered to be at all consistent with the public interest and should respectfully be rejected.

### Conclusion

In light of the foregoing, together with the record, exhibits and pleadings submitted herewith, demonstrating that as to the portions of the Award finding in favor of Respondent Verizon (a) the arbitrator exceeded his authority, (b) the awards were procured by fraud or undue means, (c) the arbitrator engaged in misbehavior prejudicial to the rights of Lightwave, (d) the arbitrator demonstrated a manifest disregard of the law, and/or (e) the awards are against public policy,    Lightwave Communications respectfully requests that its Motion for Partial Confirmation and Partial Vacatur of the Arbitration Award be granted in accordance with sections 9 and 10 of the Arbitration Act (9 U.S.C. §§ 9, 10), that Lightwave Communications be awarded its costs and attorneys fees, and that the Court grant to Lightwave such other and further relief as may be just and lawful.

Respectfully submitted,

KLEIN LAW GROUP, PLLC

SEGAL MCCAMBRIDGE SINGER
& MAHONEY, LTD

By: _____

Andrew M. Klein. (AMK8870)
4800 Montgomery Lane, Suite 700
Bethesda, MD 20814
(301) 664-6330
(301) 664-6323 (fax)
AKlein@KleinLawPLLC.com

Robert J. Kenney (RJK 6024)
Theodore M. Eder (TME 3556)
830 Third Avenue, Suite 400
New York, New York 10022
(212) 651-7500
Attorneys for the Petitioner
Lightwave Commications, LLC