UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIGHTWAVE COMMUNICATIONS, LLC

           Petitioner,

    -against-

VERIZON SERVICES CORP.,
VERIZON MARYLAND INC.,
VERIZON VIRGINIA INC.,
VERIZON SOUTH INC.,
 and VERIZON WASHINGTON D.C. INC.

          Respondents.

Civil Action No. 07 Civ. 6519

The Hon. Jed S. Rakoff

Motion Date:  August 30, 2007

**MEMORANDUM OF LIGHTWAVE COMMUNICATIONS
IN OPPOSITION TO VERIZON MOTION TO DISMISS**

Andrew M. Klein (AMK8870)
KLEIN LAW GROUP PLLC
Attorneys for the Petitioner
LIGHTWAVE COMMUNICATIONS, LLC
4800 Montgomery Lane, Suite 700
Bethesda, MD 20814
(301) 664-6330
(301) 664-6323 (fax)
AKlein@KleinLawPLLC.com

## Summary of Argument

This Honorable Court has subject matter jurisdiction in this action because Verizon's conduct that led to the underlying arbitration violates the federal Communications Act and resolution of Lightwave's motion relies directly on questions of federal law. Verizon billed Lightwave at rates that exceed the lawful rate required by the Communications Act, and charged Lightwave for items that Verizon did not actually provide.[1] Since portions of the arbitration award permit Verizon's unlawful collection of these charges, it also violates federal law. Thus, Lightwave's motion to partially vacate the award will turn on application of federal law. Noticeably absent from Verizon's motion is any statement that Verizon's actions were lawful under the Act. Verizon similarly does not deny that the awards to Verizon at issue, or Verizon's enforcement thereof, violate federal law.

Perhaps the most striking feature of Verizon's motion to dismiss is its complete lack of factual support. Verizon has submitted no documents for this Court's review, failing to provide even relevant portions of the agreements. Verizon has even failed to submit an attorney's affidavit. That is likely because Verizon knows what is true – that this Court has subject matter and personal jurisdiction in this action, and is the proper venue previously agreed upon. This Court, therefore, should ignore Verizon's factual assertions. Without them, Verizon's motion is unsupported and necessarily fails, and may be dismissed at the outset.

Verizon knows that federal courts have jurisdiction over these issues, for it has specified that United States law governs in all of its contracts with Lightwave. Verizon's most recent agreement with Lightwave even requires that both parties irrevocably consent to the subject matter jurisdiction of this Court. Verizon has consistently availed itself of the federal courts when seeking interpretation or enforcement of the Act, and admits that this particular issue is governed by the laws of the United States of America.

---

[1] Indeed, some parts of the award improperly reversed prior credits for overcharges by Verizon, that Verizon has already acknowledged to have been unlawful. This action runs directly contrary to the well-established and pro-competitive public policy woven throughout the Act.

**Statement of Fact**

Verizon and Lightwave are both certificated to provide telecommunications services under federal and state law and regulation.  Lightwave is both a customer and competitor of Verizon, the traditional monopoly provider of local service in the Northeast and mid-Atlantic regions of the United States.  This unusual circumstance is a creation of Federal law.[2]

The Federal Telecommunications Act of 1996 ("Telecom Act") was enacted "to promote competition"[3] and "open[] all telecommunications markets to competition," allowing competitors nondiscriminatory access to the networks of the traditional monopolies.[4]  But for the Telecom Act, Lightwave would not exist.

"When Congress revised the telecommunications laws in 1996 to enhance the role of competition…it left [the former regulatory scheme] in place."[5]  Thus, the Federal Communications Act of 1934, as amended by the Telecom Act ("the Act"), comprehensively regulates the telecommunications industry.  Indeed, the U.S. Supreme Court held that federal law and regulation so comprehensively govern the field that federal antitrust claims are dismissible.[6]  Indeed, the Act itself provides that "[a]ny person claiming to be damaged by any common carrier…may bring suit" against the carrier "in any district court of the United States" for "recovery of damages for which such common carrier may be liable under the provisions of [the Act]."[7]

The Act obligates Incumbent Local Exchange Carriers ("ILECs") such as Verizon to provide competitive carriers like Lightwave with access to the component parts of their networks.  The Act obligates ILECs to provide "nondiscriminatory access to network elements . . . on rates, terms, and

---

[2] Judge Vitaliano of the E.D.N.Y. has analogized the Verizon/competitor relationship to a "shotgun wedding." *Verizon New York Inc. v. Global NAPS, Inc.,* 463 F.Supp.2d 330, 342-43 (2006).
[3] Preamble, Telecommunications Act of 1996, Pub. L. No. 104-404, 110 Stat. 56 (1996).
[4] H.R. Conf. Rep. No. 104-458, at 113 (1996).
[5] *Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, __U.S. ___, 127 S.Ct. 1513, 1515 (2007).
[6] *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 (2004).
[7] 47 U.S.C. §207.

conditions that are just, reasonable, and nondiscriminatory," and cost-based.[8]  The Act instructs the

Federal Communications Commission ("FCC") to promulgate rules, and requires ILECs to enter into

Interconnection Agreements ("ICAs") with any requesting carrier,[9] which codify federal law.[10]

Pursuant to the Act, Lightwave entered into ICAs with Verizon in Maryland, Virginia, and the

District of Columbia during 2002 and 2003.  Most of the underlying billing disputes arose while

these ICAs solely governed the parties' relationship.  Following a generic FCC ruling that limited

access to local switching,[11] Verizon required Lightwave to enter into the Wholesale Service

Agreement ("WSA"), effective July 1, 2005.  Verizon drafted the WSA, and Verizon deemed the key

terms non-negotiable.  While the pre-existing cost-based rates from the parties' ICAs remained in

effect, the WSA added an extra monthly fee for ongoing access to local switching.  Loops, Transport,

and other Network Elements remained at federally-regulated cost-based rates under the ICAs.[12]

The ICAs remained effective in tandem with the WSA.[13]  All agreements expressly obligate

Verizon to remain in compliance with federal law and require that all disputes be resolved through

application of federal law.[14]  Although the majority of the disputes submitted to arbitration arose

---

[8] 47 U.S.C. §251(c)(3), and 252(d).  *See also* 47 U.S.C. 153(29); 47 C.F.R. §51.319(e); FCC CC Docket 96-98, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, First Report and Order* (rel. Aug. 8, 1996) ["*FCC Local Competition Order*"] at ¶¶ 249-51, 258-264.  Federal law delegates to each state public service commission the task of setting a rate for each Network Element under to the FCC-mandated pricing scheme.  47 U.S.C. 251(c)(3), 252(d)-(e); *see also FCC Local Competition Order*, at ¶ 29; *AT&T Corp. v. Iowa Utils. Bd.*, 252 U.S. 366 (1999) (upholding the FCC's mandated ratemaking methodology).

[9] 47 U.S.C. §251(c), 252.

[10] *See Verizon New York Inc. v. Global NAPS, Inc.*, 463 F.Supp.2d 330, 333 (E.D.N.Y. 2006) (an "ICA "must be in harmony with federal telecommunications law…[and] must reflect several statutory obligations imposed by the [Act] on incumbent and competitive local exchange carriers").

[11] *See* FCC WC Docket No. 04-313, CC Docket No. 01-338, In the Matter of Unbundled Access to Network Elements Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, Order on Remand (rel. Feb. 4, 2005), at ¶¶ 199 *et seq.* ("Remand Order").

[12] 47 C.F.R. §51.319, 51.503; FCC Local Competition Order, at ¶ 29; *see also AT&T Corp. v. Iowa Utils. Bd.*, 252 U.S. 366.  The FCC Remand Order did place certain complex conditions on access to high capacity circuits not relevant here.

[13] As noted in the WSA itself, at section 2 (Ex. G to Klein Aff.)

[14] ICAs at 4.1, 4.2; WSA at 8.1 and 8.2. (Exhibits H and G to Klein Aff.)

under the ICAs,[15] Lightwave submitted them to arbitration utilizing the procedural vehicle contained WSA due to its promise of speed, efficiency and proper application of federal law.

### Argument

### I.    THE COURT HAS SUBJECT MATTER JURISDICTION SINCE THE DISPOSITION OF LIGHTWAVE'S MOTION DEPENDS ON THE RESOLUTION OF SUBSTANTIAL QUESTIONS OF FEDERAL LAW

Verizon has violated the federal Communications Act.  The violations were not corrected in the underlying arbitration.  As a result, Lightwave called on this Court to remedy the violations and see that Verizon ceases its unlawful activity.  Verizon admits that "this action [*i.e.,* court review of the validity of the Award] would be governed by the laws of the United States and New York law."[16] This Court has federal question jurisdiction over this action under 28 U.S.C. §1331.

### A.    Verizon Violated Federal Law

Verizon and Lightwave are both regulated entities under federal law and are subject to the requirements of the Communications Act and its implementing regulations.[17]  The parties' ICAs and the WSA are likewise regulated by the Communications Act, and specifically require each party to remain in compliance with federal law in their performance thereunder.

The Communications Act provides that an aggrieved person may seek redress "for an 'unlawful' charge or practice" in a "court" of the "United States."[18]  The history of sections 201(b) and 206 "simply reinforces the language, making clear the purpose of §207 is to allow persons injured by §201(b) violations to bring federal court damages actions."[19]

---

[15] See Klein Aff. At para. 4 and Exhibit B.

[16] Verizon Reply in Support of Motion to Confirm Arbitration Award, Circuit Court of Fairfax County (Virginia), Case 2007-7982, dated August 9, 2007 (Ex. I to Klein Aff.)

[17] *See* Verizon Memo at 6 (the "statement – that "both Verizon and Lightwave are subject to federal regulation, including under the Telecommunications Act of 1996 – is true").  The Supreme Court holds that violation of a regulation implementing the Communications Act equates to a violation of the statute itself.  *Global Crossing*, 127 S.Ct. at 1519-20.

[18] *Global Crossing*, 127 S.Ct. at 1517, quoting Communications Act § 201(b), 206, 207 and Interstate Commerce Act §1, 8, 9, noting intentionally identical language in each statute.

[19] *Id.,* also noting similarities to the Interstate Commerce Act.

With specific regard to the Telecom Act, which the Supreme Court notes was enacted "in order to encourage (and sometimes to mandate) new competition,"[20] the Eighth Circuit recently held that "Federal courts have the ultimate power to interpret provisions of the 1996 Act."[21]  Under such federal law, Verizon has a fundamental and ongoing obligation to provide elements and services on a just, reasonable and nondiscriminatory basis.[22]  In providing such elements and services, Verizon is obligated to bill carriers such as Lightwave on a "complete, accurate, and timely" basis.[23]  It is with these most basic of requirements that Verizon has failed to comply.

Where the issues to be decided in a given matter involve unreasonable practices and unlawful discrimination in violation of the Communications Act, the U.S. Court of Appeals for the Second Circuit has determined that federal jurisdiction is appropriate.[24]  That holding was just recently repeated in *Alliance Communications Cooperative, Inc. v. Global Crossing Telecommunications, Inc.,* where the court found that "[u]njust or unreasonable billing practices constitute a violation of §201(b)."[25]

Lacking authority, Verizon resorts to hyperbole to obscure the facts that support the Court's jurisdiction over this action.  It is noteworthy that Verizon failed to submit a single document or

---

[20] *Id.*, 127 S.Ct. at 1517.

[21] *Iowa Network Serv., Inc. v. Qwest Corp.*, 466 F.3d 1091, 1094 (2006).

[22] *See* 47 U.S.C. §201, 202, 251, 252.  For ease of reference, several relevant sections of the Communications Act, and federal Rules implemented thereunder, are attached as an Appendix.

[23] FCC WC Docket No. 02-384, *In the Matter of Application by Verizon Maryland Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Bell Atlantic Communications (d/b/a Verizon Long Distance), NYNEX Long Distance Company (d/b/a Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc., for Authorization to Provide In-Region, InterLATA Services in Maryland, Washington, D.C., and West Virginia*, Memorandum Opinion and Order (adopted Mar. 18, 2003) at ¶ 26; *see also* FCC CC Docket No. 01-138, *In the Matter of Application of Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. for Authorization to Provide In-Region, InterLATA Services in Pennsylvania*, Memorandum Opinion and Order (adopted Sep. 19, 2001) at ¶ 13.

[24] *Nat'l Communications Ass'n, Inc. v. Am. Tel. and Tel. Co.*, 46 F.3d 220 (1995).

[25] 2007 WL 1964271 (D. S.D. 2007).

attorney's affidavit to support its motion, indicating that the motion may be nothing more than a transparent attempt to delay consideration of the merits of the request for vacatur.[26]

Verizon asserts, for example, that "the complaint (*sic*) cannot and does not allege that the decision to confirm or vacate the Arbitration Award turns on any issue of federal law other than the FAA" (Verizon Memo at 6) – notwithstanding the fact that the Lightwave Memorandum of Law in Support of the Lightwave Motion contains 45 pages of analysis of the substantive bases for vacatur under federal law.[27]  Verizon similarly asserts that the Lightwave Motion fails to "cite any provision of federal law that is relevant to the dispute."  (Verizon Memo at 6)  Quite to the contrary, the Lightwave Appeal Memorandum identifies the many different violations of federal law Verizon has committed.[28]

While Verizon does admit that "both Verizon and Lightwave are subject to federal regulation, including under the Telecommunications Act of 1996" it then argues that this fact, while "true," is "irrelevant to federal jurisdiction" due solely to the terms of a subsequent contract. (Verizon Memo at 6.)  The fallacious nature of this statement undercuts the fundamental structure upon which Verizon's arguments are built.  The fact of the matter is that Verizon cannot take actions that violate federal law – statutes, regulations and Orders – and then claim immunity by subsequently executing a bilateral agreement.[29]

Indeed, "at the initial stage of litigation, a party seeking to establish jurisdiction need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of

---

[26] This implication is strengthened by Verizon's assertion that the Fairfax action is more advanced than the within action.

[27] Hereinafter, Lightwave Appeal Memorandum.  The prior substantive analysis also provides additional support for the Court's exercise of jurisdiction.

[28] While the electronic version of the Verizon Motion indicates that it was authored by the same Verizon counsel who subsequently represented to the Court (on Friday, August 10th) that he was not familiar with the case, we presume these overstatements were inadvertent.

[29] This assertion is no more reasonable than an argument by an organized crime family that its activities fall outside of the RICO statutes by virtue of a contract executed with those it "protects."

jurisdiction."[30]  Lightwave has done that.  "When analyzing this preliminary showing, the facts must be viewed in the light most favorable to the plaintiff."[31]  The facts and circumstances in Lightwave's motion exceed this minimal standard.[32]

Indeed, among the many Verizon federal law violations, two are most illustrative.  First, Verizon billed and seeks to collect hundreds of thousands of dollars for a free service.  Second, Verizon billed Lightwave almost half a million dollars for an element it did not provide.  These actions alone confer federal question jurisdiction.

### B.     Verizon Violated the Act when it Billed Lightwave Hundreds of Thousands of Dollars for Local Usage – a Zero Cost Service

Verizon billed Lightwave, and Lightwave paid, for Local Usage (i.e., local call switching) at various rates during 2004.  The FCC then reduced the lawful rate for Virginia to $0.00, retroactive to August 1, 2002.[33]  Verizon was therefore required to refund to Lightwave all Local Usage charges already paid by Lightwave.[34]

---

[30] *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997), *citing Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). *See also Verizon Maryland* at 643 ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.") (*citations omitted*).

[31] *Id., citing* AVC Nederland, 740 F.2d at 149.  The Second Circuit went on to hold that "a disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing."  *Id., citing CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986), and *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.1972).

[32] *See Alliance Communications Cooperative, Inc. v. Global Crossing Telecommunications, Inc.,* 2007 WL 1964271.  "Global Crossing's complaint alleges that plaintiffs engaged in unjust and unreasonable practices in violation of §201(b)."  "Construed liberally and in the light most favorable to Global Crossing, plaintiffs' alleged failure to segregate charges for legitimate services . . . from charges incurred as a result of plaintiffs' alleged fraudulent scheme could constitute an unjust or unreasonable billing practice in violation of §201(b)."

[33] See Verizon Industry Letter dated December 3, 2004, Rcd., at 3789-90, Exhibit C to Klein Affidavit II (showing old "Billed Rate" for Unbundled Local Switching as ranging from $0.0010130 to 0.0026430 and "New Rate" as $0.00).

[34] Verizon did not dispute that Lightwave had in fact already paid the charges to Verizon.  During this time period, Verizon and Lightwave were parties solely to their ICAs.  When the parties' WSA was added to the ICAs in mid-2005, it incorporated the zero rate. (Rcd., at 2072, showing "N/A" in rate column.) (Ex. G to Klein Aff.)

Despite the rate of $0.00, Verizon illegally demanded additional payment from Lightwave for Local Usage in the arbitration.[35]  In manifest disregard of the law, Verizon was actually awarded $206,823.32 for the zero rate usage.[36]  Since $0.00 multiplied by any amount of Local Usage is $0, this award is both legally and logically confounding.  Since the rate of $0.00 is required to be applied across the industry,[37] Verizon's charge to Lightwave is blatantly discriminatory.  Thus, both the award and Verizon's ongoing demands for the $206,823.32 from Lightwave clearly violate federal law as undoubtedly unjust and unreasonable and therefore violative of, inter alia, sections 201, 202, 251 and 252 of the Communications Act.  Verizon has yet to contend otherwise.

The U.S. Supreme Court's April 2007 *Global Crossing* decision supports these conclusions. There, as here, the FCC under the authority of the Communications Act prescribed a particular rate, and ordered carriers to reimburse purchasers.  When the carriers failed to do so, they were properly held in violation of §201(b).[38]

### C.    Verizon Violated the Act when it Charged Almost a Half Million Dollars for Interoffice Dedicated Transport Verizon Did Not Provide

Verizon charged Lightwave $477,810.55 for Interoffice Dedicated Transport that Verizon admitted it did not provide.[39]  Charging for an item not being provided violates the federal law prohibition against unjust and unreasonable charges or practices.[40]

---

[35] Verizon misled the Arbitrator by asserting in its Brief (to which there was no Reply permitted) that "Lightwave should be compelled to pay Verizon the amounts that it has been withholding." Rcd., at 4666.

[36] Arbitration Award, Exhibit F to Klein Aff.

[37] Exhibit C to Klein Aff.

[38] 127 S.Ct. at 1523.  "The FCC properly implements §201(b) when it reasonably finds that the failure to follow a Commission, *e.g.,* rate or rate-division determination made under a *different* statutory provision is unjust and unreasonable under §201(b)." [*citing also to MCI Telecommunications Corp. v. FCC,* 59 F.3d 1407 (C.A.D.C. 1995), where "failure to follow a rate promulgated under §205 properly considered unreasonable under §201(b)."]

[39] Interoffice Dedicated Transport provides hard-wire connections, or transport, between Verizon network offices, dedicated to a particular carrier customer.

[40] 47 U.S.C. §201(b), 251.

Verizon likewise violates its "duty to provide, to any requesting telecommunications carrier . . . nondiscriminatory access to network elements . . . on rates, terms, and conditions that are just, reasonable, and nondiscriminatory in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title."[41]  Inexplicably, and in manifest disregard of federal law, the Arbitrator awarded Verizon $477,810.55 for the phantom element.[42]

Verizon admits that it did ***not*** provide the element to Lightwave.[43]  Verizon's charges, and ongoing demands for payment, violate federal law and thereby confer jurisdiction on this Court. Federal courts have authority to remedy Verizon's violations of federal law.  In fact, Verizon itself has often asserted federal question jurisdiction when alleging violation of the Communications Act or breach of Interconnection Agreement.  In one of these cases *Verizon New York Inc. v. Global NAPS, Inc.,* Verizon said, as it does here, that the dispute was, "at its essence . . . a billing dispute."[44]  In exercising jurisdiction, the Eastern District noted that "Verizon [has] not been shy in turning to the courts for resolution of disputes relating to [its] interconnection obligations and agreements."[45]

---

[41] 47 U.S.C. §251(c)(3).  Interoffice Dedicated Transport remains an Unbundled Network Element ("UNE"), as defined by 47 U.S.C. § 153(29) & 251(c), under Federal Communications Commission ("FCC") regulations (47 C.F.R. § 51.319(e)).

[42] Under the Act and the FCC's mandated ratemaking methodology, state commissions establish the lawful rate for transport based on cost.  *See* 47 U.S.C. §251(c)(3) and 252(d), and *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366 (1999).  An ILEC may charge the rate only where a competitor orders and the ILEC physically provides it. *See* C.F.R. § 51.503 *et seq.*  If, as here, the ILEC fails provide the element, there is obviously no cost, and demand for payment of the cost-based rate is clearly unlawful.  *See* 47 U.S.C. §§ 201, 202, 207, and 251;  s*ee also* Union Tel. Co. v. Qwest Corp., --- F.3d ---, 2007 WL 2153231 (10th Cir. 2007(because 47 U.S.C. § 252 requires parties to set rates through ICAs, "allowing Union to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism.").

[43] Rcd., at 1152-54, admitting that Verizon is not "actually providing the transport." After this admission, Verizon asserted that it had actually provided transport for only "$28,000" of the $477,810.55 previously claimed. Rcd., at 1172.  The provision of ***Interoffice*** Transport is a factual impossibility here since *all* of the network elements purchased by Lightwave for the disputed items are contained within the same Verizon central office. Rcd., at 2480. (Ex. D to Klein Aff.)

[44] 463 F.Supp.2d 330, 342-43 (E.D.N.Y. 2006).

[45] *Id.*

Another U.S. District Court recently determined that Verizon's claims for amounts allegedly owed in "fees and late payment penalties" was barred by the applicable federal statute.[46]  Applied to the instant matter, several Verizon claims for charges (for, e.g., CABS) and late fees are similarly barred under that same federal statute.[47]

### D.    Verizon Violations of the Interconnection Agreements and the Wholesale Service Agreement are Violative of Federal Law and Confer Federal Jurisdiction

#### 1.    Verizon Agrees Interconnection Agreements Confer Federal Jurisdiction

Verizon admits that the "ICAs between the parties" are "governed by federal law" and that they "implement federal law requirements."[48]  Since the great majority of the Verizon violations at issue occurred during the timeframe when the ICAs solely governed the parties' relationship, it is undisputed that federal jurisdiction is present here.

The ICAs are certainly not, however, as Verizon asserts, "defunct" or "replaced" by the WSA.  First, the parties' ICAs were in effect at the outset of the dispute period (January 1, 2004) and continue in effect today.  The WSA did not come into existence until July 2005, after most of the

---

[46] *segNET Technologies, Inc., v. Verizon New England, Inc.,* Civil Action No. 06-CV-11547-MEL (D. MA, July 31, 2007)  SegNET asserted violations of Verizon's federal tariffs and the Communications Act, including "Verizon's alleged illegal and improper payment demands, as well as threats to disconnect existing service and deny new service in violation of the Communications Act." (Order, at 2)  Verizon counterclaimed for money and declaratory ruling that it may terminate service.  Since Verizon had failed to institute an action to recover its charges within two years, they – and the late charges claimed by Verizon – were held barred by section 415(a) of the Communications Act.

[47] 47 U.S.C. §415(a) provides that "all actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after."  Of notable relevance here, the segNET court rejected Verizon's contention that the pendency of a billing dispute "suspends the clock," finding that "Section 415(a) cannot be construed to toll the statute of limitations for an indefinite period of time as determined by Verizon's unilateral discretion." Order, at pages 2, 5.

[48] Verizon Memo at 2, 7.  The WSA itself clearly states, on page 1, that "prior to the Effective Date of this Agreement, Verizon provided Lightwave with platforms of unbundled network elements ("UNE-P") pursuant to ICAs governed by, inter alia, Sections 251 and 252 of the Communications Act of 1934 (47 U.S.C. Section 151 et seq.), as amended (the "Act")." (Ex. G to Klein Aff.)

Verizon billing errors had already occurred.  As a result, the majority of the disputes fall under the ICAs, not the WSA, and this action is not a "billing dispute under a private contract."[49]

Second, the very WSA that Verizon argues "superseded" the ICAs instead specifically requires their continuance as a corollary to the WSA:  "In order to ensure the availability of ancillary services customarily used in connection with unbundled switching services, the Services provided herein shall be available to Lightwave only if Lightwave is and remains party to an effective Interconnection Agreement with Verizon."[50]

The parties' ICAs continue today to provide rates, terms and conditions for elements and services unrelated to the single de-listed element that necessitated the WSA.  Given these facts, and Verizon's agreement that the ICAs "implement federal law requirements" and are "governed by federal law," subject matter jurisdiction is apparent and all but conceded.

### 2.    Violations of Interconnection Agreements, which Codify Applicable Federal Law, Constitute Violations of Federal Law

ICAs were created by the Telecom Act, solely as vehicles for the implementation of the market-opening provisions of the Act.  As such, they are the embodiment of these provisions, designed to ensure that all competitive carriers have just and reasonable access to all of the items Verizon is required by federal law to provide, on nondiscriminatory rates, terms and conditions.

The Verizon billing errors preceded in significant part the effective date of the WSA, having been held up in the amorphous Verizon Dispute Process.  They were finally submitted to arbitration utilizing the procedural vehicle contained in the WSA – under the mistaken belief that these lingering Verizon violations would finally be resolved both lawfully (through the proper application of federal

---

[49] Verizon Memo, at 4.

[50] Section 2.1, which also clarifies that the ICA remains independent of the WSA. Significantly, this clause notes the parties' reliance on the ICAs for items and terms ancillary to unbundled switching. In other words, all of these "customarily used" items and elements would be purchased from the parties' federally-governed ICAs. (Ex. G to Klein Aff.)

law[51]) and speedily (within 35 days of submission[52]).  Since the Verizon violations now under review arose almost entirely under the ICAs, and constitute violations of admittedly applicable federal law, their mere submission to arbitration utilizing the process in a corollary agreement does not somehow transform them into private contract disputes as Verizon would have the Court believe.

Rather, Verizon's violations create federal question jurisdiction since they violate federal law and the ICAs that embody that federal law.  For 18 of the 30 months covered by the underlying arbitration, Verizon and Lightwave were parties solely to ICAs, and the disputes underlying 92% of the significant awards to Verizon subject to vacatur here arose during that timeframe.  In fact, 100% of the Verizon awards for CABS, Miscellaneous Usage, Loops (R2HX1) and RBM relate to bill errors that occurred under the ICAs, prior to the WSA even coming into existence.

Indeed, while $247,069 of the unlawful Interoffice Transport billing (52% of the Verizon award) occurred prior to the WSA, the remaining $240,000 billed after July 1, 2005 also violates the ICAs since Interoffice Transport remains an Unbundled Network Element under section 251(c)(3) of the Communications Act.[53]

The federal courts consistently conclude that violations of ICAs constitute violations of federal law.[54]  As noted above, Verizon itself asserts jurisdiction in federal courts to allege breaches of ICAs, including instances where, as here, the issues involved billing disputes under those agreements.[55]

---

[51] See WSA at section 8.1. (Ex. G to Klein Aff.)

[52] See WSA at section 18. (Ex. G to Klein Aff.)

[53] As such, Interoffice Transport is indisputably covered by the ICAs, which enforce those federal requirements.  Moreover, Interoffice Transport is clearly outside the scope of the WSA, which addresses Verizon's ongoing provisioning of one particular element, local switching, which the FCC de-listed as a UNE.

[54] *See, e.g., Verizon Maryland*, 535 U.S. 635, and cases noted therein.

[55] *See, e.g., Verizon New York Inc. v. Global NAPS, Inc.,* 463 F.Supp.2d 330.

**E.    Since Wholesale Service Agreement is Creature of and Governed by Federal Law, Federal Law will Determine Legality of Awards to Verizon Thereunder**

Since the ICAs are governed by federal law, Verizon cannot reasonably claim to have removed federal jurisdiction over violations of those terms by contract or otherwise.  Indeed, as one Circuit Court put it, an "arrangement…devised solely in order to circumvent regulation…as a dominant carrier[] deserves to be treated as a sham[.]"[56]    Thus, Verizon cannot divest such jurisdiction where, as here, it exists.

Verizon's WSA also states repeatedly and with admirable clarity that the agreement is governed by federal law.  "The construction, interpretation and performance of this Agreement shall be governed by (a) the laws of the United States of America and (b) the laws of the State of New York, without regard to its conflicts of laws rules."  "All disputes relating to this Agreement shall be resolved through the application of such laws."  (§8.1)  The WSA further provides that "each party shall remain in compliance with Applicable Law in the course of performing this Agreement."  (§8.2)  Even the Dispute Resolution section references back to utilization of the Applicable Law provisions as necessary to "seek enforcement of" that section, should a party "fail to comply" with its provisions. (§18)  Verizon in fact specifically makes its performance under the WSA conditional on regulatory qualifications.[57]  Verizon even reserves the right to file the WSA with the FCC.[58]

The WSA recognizes this Court's jurisdiction, stating that "Verizon and Lightwave each irrevocably consents to the personal and subject matter jurisdiction" here, "to give effect to or to enforce the provisions of this Agreement, and waives any defense of lack of jurisdiction, improper venue or inconvenient forum."  (§8.1.)

---

[56] *AT&T Corp. v. FCC*, 317 F.3d 227, 233 (D.C. Cir. 2003).

[57] The WSA provides at section 11, for example, that "Verizon shall have no obligation to perform under this Agreement until such time as Lightwave has obtained such Federal Communication Commission ("FCC") and state utility commission authorizations as may be required by Applicable Law[.]" (Ex. G to Klein Aff.)

[58] Section 35.2.  Verizon extracts, in section 35.1, waivers of various rights by Lightwave, tacitly acknowledging the application of these various section of the Telecom Act.  (Ex. G to Klein Aff.)

The WSA also provides for enforcement of an arbitrator's award in any court having jurisdiction over the parties. (Section 18.) Since the Lightwave Motion seeks partial confirmation of the arbitration Award, this portion of the WSA alone confers jurisdiction on this Court.

Verizon's claim that these disputes arise out of a "private contract" is further undercut by federal law, which may deem the WSA an Interconnection Agreement under the Communications Act. For example, the Eighth Circuit found that Verizon's fellow Bell Company ILEC was appropriately fined for failing to file agreements it had with competitive carriers, since there are "several sources that provide notice as to the breadth of 'Interconnection Agreements'" as used in the Communications Act[59]

The FCC has "broadly interpreted the Act's filing requirement to include *any* agreements concerning rates, terms, and conditions an ILEC makes available to other CLECs."[60] In fact, the Eighth Circuit specifically cited to contract terms dealing with escalation and "dispute resolution" as having a "commonsense relevance to interconnection and unbundled access."[61] The court noted the U.S. Supreme Court's determination that rates "do not exist in isolation" and "have meaning only when one knows the services to which they are attached."[62] The Court upheld the $25.95 million fine since (a) the ILEC's failure to file the agreements violated both federal and state law, (b) "millions of dollars are at stake in ICAs," and (c) "the legislative decision to punish [such] anti-competitive

---

[59] *Qwest Corporation v. Minnesota Public Utilities Commission*, 427 F. 3d 1061, 1069 (2005).
[60] *Id., citing Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15,499, para. 167 (1996) (*emphasis added*). Federal law (47 U.S.C. §203(a)) also fundamentally requires Verizon to disclose all charges for the services it offers, fostering the important policy goals of ensuring just and reasonable rates (47 U.S.C. §201), preventing discrimination and undue preference (47 U.S.C. §202; 251, 252(i)), and clearly identifying rates and providing customers with the information necessary to determine if they have been properly billed. (see 47 U.S.C. §203(a), requiring that rates to be "open to public inspection."
[61] *Id.*
[62] *Id., citing AT&T v. Central Office Tel., Inc.,*, 524 U.S. 214, 223, 118 S.Ct. 1956 (1998).

behavior."[63]  Finally, and in addition to the foregoing, Verizon's claim that the dispute is merely a

"commercial dispute" is unavailing, since such contract claims are superseded by federal law.[64]

### F.       The Grounds for Partial Vacatur Turn on Questions of Federal Law.

Federal courts have jurisdiction over "all civil actions arising under the…laws…of the United

States."[65]  Federal question jurisdiction exists where "the plaintiff's right to relief necessarily depends

on resolution of a substantial question of federal law."[66]  Courts must "look to the nature of the

federal question…to see if it is sufficiently substantial to warrant federal jurisdiction."[67]  "The greater

the federal interest at stake, the more likely it is that federal jurisdiction will be found."[68]

As the Supreme Court said in *Verizon Maryland,* "the district court has jurisdiction if 'the right

of the sustained of the Constitution and laws of the United States are given one construction and will

defeated if they are given another[.]"[69]  In that case, Verizon sought federal question jurisdiction,

stating that was that the commission's regulation was "pre-empted by a federal statute which, by

virtue of the Supremacy Clause of the Constitution, must prevail, and its claim thus presents a federal

question which the federal courts have jurisdiction under 28 U.S.C. 1331 to resolve."[70]

The FAA provides that a court may vacate an arbitration award where the arbitrator exceeded

his powers,[71] the award was procured by fraud or undue means, there is evidence of arbitrator

---

[63] *Id.,* at 1069-1070.

[64] *AT&T v. Central Office Tel., Inc.,*, 524 U.S. 214.

[65] 28 U.S.C. § 1331.

[66] Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d Cir. 2000), *quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

[67] *Id.,* at 26, *quoting Greenblatt v. Delta Plumbing & Heating Corp*., 68 F.3d 561, 570 (2d Cir. 1995)].

[68] *Id.*

[69] 535 U.S. 635, 122 S.Ct. 1753 (2002) (*citations omitted*).

[70] *Id.* at 535 U.S. 642, 122 S.Ct. 1758, *citing Shaw v. Delta Air Lines*, Inc. 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890 (1983) (*internal quotations omitted*). The Court determined that federal district courts do have federal question jurisdiction over state public service commission decisions, to ensure their compliance with the Communications Act.

[71] 9 U.S.C. §10(a)(4).  Parties' Agreement and "submission by the parties determines the scope of the arbitrators' authority."  *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991). *See also Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

partiality, or where the arbitrator engaged in misbehavior prejudicial to the rights of a party.[72] Federal Courts may also vacate an arbitration award in cases where the arbitrator has demonstrated a manifest disregard of the law[73] and where the award violates established public policy.[74]

The Second Circuit considered the issue of federal court subject matter jurisdiction over a motion to vacate an arbitration award in *Greenberg v. Bear, Sterns & Co.*[75] The Court established that where an issue "turns on the ground for the petitioner's challenge to the award,"[76] and a court must "determine what the federal law is" to decide whether vacatur is warranted, the motion presents a substantial federal question.[77]

Specifically, the court held that a motion to vacate an arbitration award on the ground that the arbitrator "manifestly disregarded" federal law warrants federal subject matter jurisdiction.[78] Applying its test, the court stated that "review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law."[79] The court concluded that "[t]his process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present."[80]

   1. *Lightwave's Motion Turns on a Substantial Question of Federal Law*

---

[72] 9 U.S.C. §10(a)(1)-(3).

[73] First articulated by U.S. Supreme Court in *Wilko v. Swan,* 346 U.S. 427 (1953).  In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)(rule triggered by arbitrator's failure to apply governing law, not error of law.

[74] The public policy ground is also a common law doctrine, based on the premise that a court can refuse to enforce a contract for immoral or illegal act.  *See United Paperworkers International Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 43 (1987); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997); and *Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997).

[75] 220 F.3d 22.

[76] *Id*., at 26.

[77] *Id*., at 27.  *See also Minor v. Prudential Sec., Inc*., 94 F.3d 1103, 1105-06 (7th Cir. 1996) (acknowledging that federal courts may have jurisdiction over a motion to vacate that involves resolution of federal claims or "some question of federal law").

[78] *Greenberg*, 220 F.3d at 27-28.

[79] *Id.* at 27.

[80] *Id.* at 27.

Resolution of each ground in Lightwave's motion requires the Court to "determine what the federal law is" and whether vacatur is warranted. Many of the awards to Verizon, if enforced, would allow Verizon to violate the Communications Act. Each ground for vacatur therefore turns on a substantial question of federal law – Verizon's compliance with the Act. Indeed, this Court has previously recognized "[t]he federal government undoubtedly has a strong interest in ensuring compliance with [federal law]."[81]

Lightwave's motion turns on whether certain arbitration awards, if enforced, would allow Verizon to violate the Act. The Act mandates that Verizon comply with the Act and FCC regulations under it. Both the ICAs and the WSA acknowledge this.[82] Verizon cannot remove itself from regulation by agreement. Thus, all of Verizon's actions under the agreements are subject to federal law. As a result, Lightwave's motion turns on the application of federal law.

### a. Enforcement of the Arbitration Awards to Verizon Would Violate the Communications Act

Courts can vacate an arbitration award where enforcement would violate a "well defined and dominant public policy."[83] Where the policy is a federal one, resolution necessarily turns on a substantial question of federal law.[84] Verizon must provide access on "rates, terms, and conditions that are just, reasonable and nondiscriminatory."[85] Each of the actions that Lightwave challenged in the arbitration violated this policy.

Verizon's enforcement of the awards challenged would allow Verizon to collect charges in violation of the Act and FCC regulations that comprehensively form a well-defined and dominant national telecommunications policy. Enforcement of the awards would allow Verizon to remove itself from its obligations under the Act and FCC, allowing Verizon to snub the policy behind the

---

[81] *General Maritime Management, LLC v. ST Shipping & Transport, Inc.*, 2004 WL 1320893, 5 (S.D.N.Y. 2004).
[82] WSA, Exhibit G, at § 8.2; ICAs, Exhibit H at § 4.
[83] *Greenberg*, 220 F.3d at 27.
[84] *See Id.* at 27.
[85] 47 U.S.C. §251(c)(2)(D).

Act. Such a result not only permits unlawful billing, but also allows Verizon to act in a discriminatory and anticompetitive manner in violation of the public policies underlying the Act.. This result cannot be taken lightly because antitrust remedies are not presently available.[86]

As a result, the motion requires resolution of a federal question: whether the enforcement of the awards to Verizon would be contrary to federal telecommunications policy. Because federal law comprehensively regulates and promotes competition, Lightwave's motion raises a substantial federal question and this Court therefore has federal question jurisdiction.

### b. The Arbitrator Manifestly Disregarded Federal Law and Exceeded His Authority

A court may vacate an arbitration award where the arbitrator exceeded his powers,[87] or manifestly disregarded federal law.[88] *Greenberg v. Bear Sterns* held that an arbitration vacation motion based on an arbitrator's manifest disregard of federal law warrants federal subject matter jurisdiction.[89] Review for manifest disregard necessarily requires the court "to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present."[90]

Since the awards to Verizon are so clearly violative of applicable federal law (see sections A. and B, supra), it is virtually indisputable that the arbitrator manifestly disregarded the law. While the standard for jurisdiction in this instance requires only that there be valid questions raised as to the existence and application of such federal law, the facts here prove far more.[91] Verizon has not

---

[86] *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 415 (2004).
[87] 9 U.S.C. §10(a)(4).
[88] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); see also George Watts & Sons, Inc. v. Tiffany & Co., 248 F.3d 577, 581 (7th Cir. 2001) ("manifest disregard" applies where order "require[es] the parties to violate the law" or "does not adhere to the legal principles specified by contract, and [is] hence unenforceable under FAA § 10(a)(4)").
[89] *Greenberg*, 220 F.3d at 27-28.
[90] *Id.* at 27.
[91] *See, e.g.,* Award of $206,823.32 to Verizon for a zero-rate element.

contested that the awards being challenged are lawful – neither here nor in its Fairfax Motion. Furthermore, the awards so clearly and directly conflict with federal law and regulation, and precedent, that the possibility that the arbitrator actually considered federal law in issuing his awards is extremely limited, if not nil altogether.  Since the determination of these issues will so immerse the Court in these questions of federal law, jurisdiction is present.

## II.    VERIZON IRREVOCABLY CONSENTED TO JURISDICTION AND VENUE IN THIS FEDERAL COURT

Verizon irrevocably consented to jurisdiction, forum and venue in this Court.  By the forum selection clause that Verizon required in the WSA, Verizon "irrevocably" consented to "personal and subject matter jurisdiction" in New York federal and state courts.  Verizon also waived the very objections that it makes in the motion to dismiss:  "any defense of lack of jurisdiction, improper venue or inconvenient forum."[92]  The agreement unambiguously names New York federal and state courts as the proper forums with personal jurisdiction over Verizon and subject matter jurisdiction over this action.  The Court should enforce that clause.[93]

### A.    Jurisdiction and Venue Provisions are *Prima Facie* Enforceable

Both federal and New York courts have consistently held that forum selection clauses are *prima facie* enforceable.  The U.S. Supreme Court first set this principle in the 1972 *M/S Bremen v.*

---

[92] *See* Exhibit G to the Klein Aff.  Verizon has admitted that the forum selection clause is valid.  *See* Verizon's Fairfax Motion, Exhibit I to the Klein Aff., at p. 6.

[93] Additionally, the Wholesale Advantage Agreement contains a choice of law provision favoring New York and federal law.  *See* Exhibit G.  The Interconnection Agreements also contain choice of law provisions favoring federal Law.  (*See* Exhibit H to the Klein Aff. at ¶ 4.)  Verizon cannot now challenge its own forum selection clause by racing to file in Virginia, as federal courts apply federal law to determine whether to enforce forum selection clauses.  As the Second Circuit held in *Phillips v. Audio Active Limited*, --- F.3d ---, 2007 WL 2090202 (2d Cir. July 24, 2007.  See also *Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990).

*Zapata Off-Shore*[94] decision.  The *Bremen* Court upheld a forum selection clause that chose an

English court.[95]

The Supreme Court held that where sophisticated parties negotiate a forum selection clause,

the clause is *prima facie* valid and "should be given full effect" unless the resisting party can show

fraud, overreaching, or that enforcement would be unreasonable, unjust or against public policy.[96]

The court also stated that a party seeking to invalidate the clause should bear a "heavy burden."[97]

The Supreme Court expanded the *Bremen* principle in *Carnival Cruise Lines, Inc. v. Shute*,

holding that forum selection clauses are enforceable, even when not freely negotiated.[98]   Federal

courts have consistently applied this principle.  In the *Bense v. Interstate Battery Sys. Of America,*[99]

the Second Circuit applied the *Bremen* standard to a domestic contract dispute and held that the

Circuit had a "strong policy" of enforcing forum selection clauses.[100]   In the *Jones* case, *supra*, the

Second Circuit again followed *Bremen*, upholding a forum selection clause in a diversity case.[101]

In *Sun Forest Corp. v. Eli Shvili*[102] the court found that a party opposing a forum selection clause

must make a "strong showing" that the clause resulted from "fraud, undue influence, or overweening

---

[94] 407 U.S. 1, 92 S.Ct. 1907 (1972).

[95] In *Bremen*, a foreign company, Interweser, contracted with an American company, Zapata, which sued for breach of contract in a U.S. District Court.  Interweser filed a claim in England under a forum selection clause and moved to dismiss or stay the U.S. action.  The U.S. Court of Appeals for the Fifth Circuit affirmed the denial of the motion.

[96] *Id.*, at 12-13, 92 S.Ct. at 1914-1915.

[97] *Id.*, at 17, 92 S.Ct. at 1917. This is especially true where the parties incorporate a forum selection clause to provide a neutral forum experienced and capable to resolve disputes under the contract.  *Id*.

[98] 499 U.S. 585, 111 S.Ct. 1522 (1991) (Washington State residents challenging a Florida forum selection clause).

[99] 683 F.2d 718, 721-22 (2d Cir. 1982).  *See also Weiss v. Columbia Pictures Television, Inc*. 801 F.Supp. 1276, 1278 (S.D.N.Y. 1992).

[100] *Id.  See also New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24 (2d Cir. 1997).

[101] *Jones,* 901 F.2d, 18-19.  *See also Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.,* 838 F.2de 656, 659 (2d Cir. 1988).  In *Stamm v. Barclays Bank of New York* forum selection clause that chose England for disputes between American investors and an English underwriting company was upheld by the court. 960 F.Supp. 724 (S.D.N.Y. 1997).  *See also Composite Holdings, L.L.C. v. Westinghouse Electric Corp.,* 992 F.Supp. 367, 369 (S.D.N.Y. 1998)

[102] 152 F.Supp.2d 367 (S.D.N.Y. 2001).

bargaining power."[103]  In 2004, District Court Judge Sweet enforced a forum selection clause in *G & R Moojestic Treats, Inc. v. Maggiemoo's Intern., LLC*[104] under the same principles.

New York courts have followed suit.  In *Brooke Group Ltd. v. JCH Syndicate 488*[105] the New York Court of Appeals followed *Bremen*, holding that "it is now recognized that parties to a contract may freely select a forum which will resolve any disputes."  The *Brooke* court found that forum selection clauses are "*prima facie* valid and enforceable" because they "provide certainty and predictability in the resolution of disputes."[106]  The Court of Appeals again followed *Bremen* in *Boss v. American Express Financial Advisors, Inc.*.[107] enforcing a forum selection clause even where the statute of limitations had run in the chosen forum.[108]

Under these clear principles, the Court should enforce Verizon's forum selection clause. Verizon, a sophisticated company, insisted on the forum selection clause,[109] and it should be construed more strongly against Verizon.[110]  Verizon, with its headquarters in New York, affirmatively designated the federal and state courts in Manhattan for resolution of disputes such as this.  Verizon could certainly point to no fraud, undue influence or unfair bargaining power on the

---

[103] *Id.*, at 380-81, *quoting Bremen*, 407 U.S. at 12, 15, 92 S.Ct. 1907.  *See also Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993).

[104] 2004 WL 1110423 (S.D.N.Y. 2004).

[105] 87 N.Y.2d 530, 663 N.E.2d 635, 640 N.Y.S.2d 479 (1996).

[106] *Id.*, citing *Bremen, supra.  See also Columbia Cas. Co. v. Bristol-Myers Squibb Co.*, 215 A.D.2d 91, 635 N.Y.S.2d 173 (1st Dep't 1995).

[107] 6 N.Y.3d 242, 844 N.E.2d 1142, 811 N.Y.S.2d 620 (2006).

[108] *Id., citing Brooke, supra. See also Koob v. IDS Financial Services, Inc.*, 213 A.D.2d 26, 629 N.Y.S.2d 426 (1st Dep't 1995)(enforced forum selection clause where petitioner consented to Minnesota court), *Micro-Balanced Products Corp. v. Hlavin Industries Ltd.*, 238 A.D.2d 284, 667 N.Y.S.2d 1 (1st Dep't 1997), *citing Koob v. IDS Financial Servs.*, 213 A.D.2d 26, 33 (1st Dep't 1995)(policy of New York courts to enforce forum selection and choice of law provisions.); *Koko Contracting, Inc. v. Continental Environmental Asbestos Removal Corp.*, 272 A.D.2d 585, 709 N.Y.S.2d 825 (2d Dep't 2000); *Triple Z Postal Services, Inc. v. United Parcel Services, Inc. et al.*, 13 Misc.3d 1241, 831 N.Y.S.2d 357 (NY Co. 2006).

[109] See Klein Aff. at ¶ 14.

[110] *See Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974), *citing Tenneco, Inc. v. Greater LaFourche Port Comm'n*, 427 F.2d 1061, 1065 (5th Cir. 1970), *quoting from Restatement of Contracts* § 236(d) (1932).

part of Lightwave, nor any public policy reason that the Court should not enforce the clause.  As a result, the jurisdiction and venue provisions are valid and should be enforced by the Court.

Further, Verizon's attempt to circumvent its own clause by racing to a Virginia court cannot help Verizon.  The agreements cover services that Verizon must provide in Maryland, Washington D.C. and Virginia.  Ninety percent of the acts underlying the disputes occurred outside Virginia[111] Thus, Virginia is an improper venue even independent from the forum selection clause.

### B.    The Mandatory/Permissive Analysis Does Not Apply Here

Whether the forum selection clause is mandatory does not matter; court's determine the mandatory/permissive question when deciding whether to dismiss a claim in favor of a forum selection clause.  For instance, in the *Macsteel Intern. USA Corp. v. M/V Spar Two*,[112] District Court Judge Rakoff stated that "[t]he law in this Circuit is reasonably well settled that a forum selection clause will only serve to deprive a district court of jurisdiction where the language makes manifest that it is intended to confer exclusive jurisdiction on some other court."[113]

That is clearly not the case here.  To the contrary, Verizon has asked this Court to dismiss the action in spite of a forum selection clause, with which Lightwave has complied by filing here. Verizon has moved to dismiss so that the action will proceed in its preferred venue – Fairfax, Virginia.  But Verizon has not moved to dismiss based on a Virginia forum selection clause, since such a clause does not exist.

The Second Circuit most recently addressed these issues in *Phillips*,[114] where a defendant moved to dismiss under a forum selection clause favoring *another* court.  The court dismissed in favor of the selected forum – England.  While *Phillips* looked to the mandatory nature of the clause, the court was careful to say that the test applied when the clause chose another court, not where, as

---

[111] Eighty percent of the acts occurred in Maryland.  See Klein Aff., at ¶ 15.
[112] 2002 WL 472018 (S.D.N.Y. March 28, 2002).
[113] *Id.*
[114] --- F.3d.  ;WL 2090202.

here, a party seeks to dismiss a claim from the forum that the parties selected in the clause.[115]  Thus, the mandatory/permissive analysis does not apply here.  The Court, therefore, should enforce the forum selection clause and deny Verizon's motion to dismiss.

In any event, Verizon's forum selection clause should be considered mandatory.  The facts here are very analogous to *AGR Financial, L.L.C. v. Ready Staffing, Inc.*,[116] in which Judge Scheindlin upheld a forum selection clause that provided a party "may" bring suit in New York federal or state courts.  The court stated that while the clause did not contain the term "shall," it nevertheless was mandatory and enforceable.  According to *AGR*, discretionary clauses, like the one here, can still be mandatory since specific language that compels filing in the selected forum is not necessary for a mandatory finding.  Rather, as here, it is sufficient that the clause excludes all other courts once a party files in the selected court[117]

Here, Verizon's consent to jurisdiction and venue in this Court is irrevocable.  Verizon also waived objections to jurisdiction, venue and forum, thus, excluding other courts once an action is filed in New York federal or state court.  Lightwave's filing did just that – and thereby excluded all other courts.[118]  As in *AGR*, Lightwave's decision is binding[119] and the Court should enforce it.[120]

---

[115] Id., at *3; *citing D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994); *Roby*, 996 F.2d at 1358-61; *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1907; and *Bense*, 683 F.3d at 721.

[116] 99 F.Supp. 399 (S.D.N.Y. 2000).

[117] *Id.*, at 402-3.  *See also Boutari*, 22 F.2d at 53; *MacSteel*, 2002 WL 472018 at *1; *City of New York v. Pullman, Inc*. 477 F.Supp. 438, fn. 11 (S.D.N.Y. 1979).

[118] Lightwave's filing triggered the exclusivity provision in the clause, making the clause exclusive.

[119] *Id.*, at 402.

[120] The choice of law provisions in the Wholesale Advantage Agreement and the Interconnection Agreements also support the mandatory nature of the clause.

C.    **The Abstention Doctrine of *Colorado River* Has No Application Here**

Verizon's reliance on *Colorado River*[121] is puzzling, since the Supreme Court rejected application of the abstention doctrine there – largely because, like here, *Colorado River* did not require the court to resolve complex issues of state law or policy, or involve state-federal relations.

"The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."[122]   Abdication of this obligation by abstention is justified only in "exceptional circumstances where" it "would clearly serve an important countervailing interest."[123]   None of the narrow qualifying factors are present here. [124]   As *Colorado River* also recognized "the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."[125]

The principle that Verizon pulled from *Colorado River* was a list of factors to consider for "wise judicial administration."  As the court cautioned, those circumstances are even "more limited" than those for abstention.  The *Colorado River* court reluctantly gave up the "virtually unflagging obligation of federal courts to exercise the jurisdiction given to them"[126] because that course aligned

---

[121] *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976).

[122] The abstention doctrine applies only where state law may moot federal constitutional issues; difficult questions of state law bear on policy problems of substantial public import, such as eminent domain, transcend the case; or federal review would disrupt state efforts to establish coherent policy on a matter of substantial public concern.  *Colorado River Water*, 424 U.S. at 814-15, 96 S.Ct., at 1244-45.  These issues are not present here.

[123] *Colorado River*, 424 U.S. at 813, 96 S.Ct., at 1244, *quoting County of Allegheny,* 360 U.S. 185, 79 S.Ct. 1060 (1959)..

[124] *Colorado River* also was not a forum selection clause case.  The abstention doctrine is not an exception that would allow courts to disregard forum selection clauses.

[125] *Colorado River*, 424 U.S. at 817, 96 S.Ct., at 1246.  The other cases Verizon cites for the abstention doctrine are equally unavailing because the doctrine does not apply.  Indeed, this Court also has supplemental jurisdiction over any state law or non-federal question claims under 28 U.S.C.A. § 1367.  Even where an independent basis for federal jurisdiction is lacking, court may exercise subject matter jurisdiction over claims which are part of same case or controversy that includes the federal claim.  *See Sriram v. Preferred Income Fund III Ltd. Partnership*, 22 F.3d 498 (2d Cir. 1994); *Hetchkop v. Gundolt Carpet Workroom, Inc.,* 841 F.Supp. 113; S.D.N.Y.,1994; *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd*., 840 F.Supp. 211 (E.D.N.Y. 1994).

[126] *Id*., at 817-818, 96 S.Ct., at 1246.

with the policy and purposes behind a specific federal statute – the McCarran Amendment[127] – under which the U.S. Government consented to state court jurisdiction for water rights actions.  Thus, the court's decision to dismiss the District Court action turned on a specific law and its effect on jurisdiction over the United States under 28 U.S.C. § 1345.  No such statute or policy exists here.

The "wise judicial administration" principle does not apply here for other reasons as well.  First, this action belongs in New York as a result of the forum selection clause and choice of law clauses.  Second, the order of filing is unmoving because the two actions commenced so closely in time.  Verizon filed its improper Virginia action on July 5, 2007, and Lightwave filed its proper action shortly thereafter and within the limited statutory timeframe.  Third, Lightwave has asked the Virginia court to dismiss or stay the Virginia action because this action is properly pending here.[128] The Virginia Court questioned its jurisdiction, *sua sponte,*[129] at the very first conference - that Verizon initiated.[130]  It is thus likely that the Virginia court will grant Lightwave's request, and avoid piecemeal litigation.  This court already has issued a temporary restraining order enjoining Verizon from an embargo.[131]

### Conclusion

Since Verizon has violated federal law, the arbitrator manifestly disregarded federal law, the arbitration award violates federal law, the Court's determination of this action will necessarily turn on the application of federal law.  The forum selection clause and choice of law clause subject Verizon to this Court's jurisdiction and venue.  This Court already has issued a temporary restraining order and, thus is more invested in this action than the Virginia court.  Lightwave Communications respectfully requests that the Court  deny Verizon's motion in its entirety, grant to Lightwave costs and attorneys fees, and provide to Lightwave such other and further relief as may be just and lawful.

---

[127] 43 U.S.C. § 666.
[128] *See* Lightwave's Virginia Reply, Exhibit J to the Klein Aff.
[129] *See* Klein Aff., at ¶ 16.
[130] Verizon Memo at 11.
[131] *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356 (2d Cir. 1985).

Respectfully submitted,

_____/S/_____

| | |
|---|---|
| Robert J. Kenney (RJK 6024)<br>SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD<br>830 Third Avenue, Suite 400<br>New York, New York 10022<br>(212) 651-7500 | Andrew M. Klein (AMK8870)<br>KLEIN LAW GROUP PLLC<br>4800 Montgomery Lane, Suite 700<br>Bethesda, MD 20814<br>(301) 664-6330<br>(301) 664-6323 (fax)<br>AKlein@KleinLawPLLC.com<br><br>Attorneys for the Petitioner |

# TABLE OF CONTENTS

Summary of Argument ................................................................................................. 1

Statement of Fact ....................................................................................................... 2

Argument .................................................................................................................. 4

I.    The Court Has Subject Matter Jurisdiction since the Disposition of Lightwave's Motion Depends on the Resolution of Substantial Questions of Federal Law ............................... 4

    A.    Verizon Violated Federal Law ............................................................... 4

    B.    Verizon Violated The Act When It Billed Lightwave Hundreds Of Thousands Of Dollars For Local Usage – A Zero Cost Service ...................................... 7

    C.    Verizon Violated The Act When It Charged Almost A Half Million Dollars For Interoffice Dedicated Transport Verizon Did Not Provide ..................................... 8

    D.    Verizon Violations Of The Interconnection Agreements And The Wholesale Service Agreement Are Violative Of Federal Law And Confer Federal Jurisdiction ....... 10

    1.    Verizon Agrees That Interconnection Agreements Confer Federal Question Jurisdiction ................................................................................... 10

    2.    Violations Of Interconnection Agreements, Which Codify Applicable Federal Law, Constitute Violations Of Federal Law ................................................ 11

    E.    Since Wholesale Service Agreement Is Creature Of And Governed By Federal Law, Federal Law Will Determine Legality Of Awards To Verizon Thereunder ........ 13

    F.    The Grounds For Partial Vacatur Turn On Questions Of Federal Law. .............. 15

Ii.    Verizon Irrevocably Consented To Jurisdiction And Venue In This Federal Court ........ 19

    A.    Jurisdiction And Venue Provisions Are *Prima Facie* Enforceable ...................... 19

    B.    The Mandatory/Permissive Analysis Does Not Apply Here ............................... 22

    C.    The Abstention Doctrine Of *Colorado River* Has No Application Here ............. 24

Conclusion ................................................................................................................ 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Corp. v. FCC*, 317 F.3d 227, 233 (D.C. Cir. 2003) ............................................................... 13

*AT&T Corp. v. Iowa Utils. Bd.*, 252 U.S. 366 (1999). .......................................................... 3, 4, 10

*AT&T v. Central Office Tel., Inc.*,, 524 U.S. 214, 223, 118 S.Ct. 1956 (1998) ................................ 15

AVC Nederland, 740 F.2d at 149 ....................................................................................................... 7

*Alliance Communications Cooperative, Inc. v. Global Crossing Telecommunications, Inc.,* 2007 WL 1964271 ............... 7

*Bense v. Interstate Battery Sys. Of America* 683 F.2d 718, 721-22 (2d Cir. 1982) ....................... 21, 24

*Brooke Group Ltd. v. JCH Syndicate 488* 6 N.Y.3d 242, 844 N.E.2d 1142, 811 N.Y.S.2d 620 (2006) ............ 22

*Carnival Cruise Lines, Inc. v. Shute* 499 U.S. 585, 111 S.Ct. 1522 (1991) ...................................... 21

*City of New York v. Pullman, Inc.* 477 F.Supp. 438, fn. 11 (S.D.N.Y. 1979) ..................................... 25

*Colorado River Water,* 424 U.S. at 814-15, 96 S.Ct., at 1244-45 .............................................. 25, 26

*Columbia Cas. Co. v. Bristol-Myers Squibb Co.*, 215 A.D.2d 91, 635 N.Y.S.2d 173 (1st Dep't 1995) ............ 22

*County of Allegheny,* 360 U.S. 185, 79 S.Ct. 1060 (1959) ............................................................ 25

*CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) ........................................................... 7

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) .................................................. 24

*DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2d Cir. 1997); and *Saint Mary Home, Inc. v. Service Employees Intern. Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997) ................................ 17

*Financial, L.L.C. v. Ready Staffing, Inc* 99 F.Supp. 399 (S.D.N.Y. 2000) ...................................... 24

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) ................... 16

*Freeport Indonesia, Inc*., 503 F.2d 955 (5th Cir. 1974) ............................................................ 23

*General Maritime Management, LLC v. ST Shipping & Transport, Inc*., 2004 WL 1320893, 5 (S.D.N.Y. 2004) . 18, 22, 23

*Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, __U.S. ___, 127 S.Ct. 1513, 1515 (2007). ................................................................................................ 2, 5, 9

Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d Cir. 2000) ...................................... 16, 17, 18

*Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir. 1995) ......................... 16

*Iowa Network Serv., Inc. v. Qwest Corp.*, 466 F.3d 1091, 1094 (2006) ........................................... 5

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc*., 22 F.3d 51, 53 (2d Cir. 1994) ........... 24, 25

*Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990) ................................................................ 20, 21

*Koko Contracting, Inc. v. Continental Environmental Asbestos Removal Corp.*, 272 A.D.2d 585, 709 N.Y.S.2d 825 (2d Dep't 2000) .............................................................................................. 22

*Koob v. IDS Financial Services, Inc.*, 213 A.D.2d 26, 629 N.Y.S.2d 426 (1st Dep't 1995) ................ 22

*Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.1972) ....................... 7

*M/S Bremen v. Zapata Off-Shore*, 407 U.S. at 15, 92 S.Ct. at 1907 ........................................ 21, 22, 24

*MacSteel*, 2002 WL 472018 at *1 ...................................................................................... 25

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) ......................................... 7

*MCI Telecommunications Corp. v. FCC*, 59 F.3d 1407 (C.A.D.C. 1995) ........................................ 9

*Micro-Balanced Products Corp. v. Hlavin Industries Ltd.*, 238 A.D.2d 284, 667 N.Y.S.2d 1 (1ˢᵗ Dep't 1997) ................ 22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ....................... 16, 19

*Nat'l Communications Ass'n, Inc. v. Am. Tel. and Tel. Co.*, 46 F.3d 220 (1995) ................................. 6

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ........................ 7, 21

*Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) ............................................... 16

*Phillips v. Audio Active Limited*, --- F.3d ---, 2007 WL 2090202 (2d Cir. July 24, 2007) ................................ 20

*Prudential Sec., Inc.*, 94 F.3d 1103, 1105-06 (7th Cir. 1996) ........................................... 17

*Qwest Corporation v. Minnesota Public Utilities Commission*, 427 F. 3d 1061, 1069 (2005) ........................... 15

*Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ........................................... 24

*segNET Technologies, Inc., v. Verizon New England, Inc.*, Civil Action No. 06-CV-11547-MEL (D. MA, July 31, 2007) ......................................................................................................... 10

*Shaw v. Delta Air Lines*, Inc. 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890 (1983) ........................... 16

*Stamm v. Barclays Bank of New York* 960 F.Supp. 724 (S.D.N.Y. 1997) ............................... 22

*Sun Forest Corp. v. Eli Shvili* 152 F.Supp.2d 367 (S.D.N.Y. 2001) ..................................... 22

*Tenneco, Inc. v. Greater LaFourche Port Comm'n*, 427 F.2d 1061, 1065 (5ᵗʰ Cir. 1970) ..................... 23

Telesco v. Telesco Fuel and Masons' Materials, Inc., 765 F.2d 356 (2d Cir. 1985) ........................ 25

*Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991) ...................... 16

*Triple Z Postal Services, Inc. v. United Parcel Services, Inc. et al.*, 13 Misc.3d 1241, 831 N.Y.S.2d 357 (NY Co. 2006) 22

*United Paperworkers International Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 43 (1987) ................. 17

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 (2004) .............. 2, 19

*Verizon Maryland v. Public Service Commission of Maryland* 535 U.S. 635, 122 S.Ct. 1753 (2002) ................ 5, 7, 13, 16

*Verizon New York Inc. v. Global NAPS, Inc.*, 463 F.Supp.2d 330, 333 (E.D.N.Y. 2006) .................. 2, 3, 10, 13

*Wilko v. Swan*, 346 U.S. 427 (1953) ............................................................. 16

# FEDERAL STATUTES AND RULES

47 U.S.C. §205 .......................................................................................... 9
47 U.S.C. §206 .......................................................................................... 5
28 U.S.C. §1331 ................................................................................. 4, 17, 18, 22, 23
43 U.S.C. §666 .......................................................................................... 31
47 C.F.R. §51.319(e) ............................................................................... 3, 4, 10
47 U.S.C. §153(29) ................................................................................... 3, 10
47 U.S.C. §201 ................................................................................. 5, 8, 9, 10, 17
47 U.S.C. §202 .......................................................................................... 17
47 U.S.C. §203(a) ...................................................................................... 17
47 U.S.C. §207 ........................................................................................ 3, 5
47 U.S.C. §251(c)(3) .............................................................................. 3, 10, 14, 21
47 U.S.C. §252 .......................................................................................... 10
47 U.S.C. §415(a) ....................................................................................... 11
47 U.S.C. §51.1 *et seq.* ................................................................................ 21
47 U.S.C. Section 151 et seq. ...................................................................... 12, 20
9 U.S.C. §10(a)(4) ................................................................................... 18, 22

FRCP §11 ............................................................................................................................... 11
H.R. Conf. Rep. No. 104-458, at 113 (1996)...................................................................................... 2
*Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,* 11 F.C.C.R. 15,499, para. 167 (1996)................................................................................................................................ 17
Interstate Commerce Act §1 .................................................................................................................. 5
Preamble, Telecommunications Act of 1996, Pub. L. No. 104-404, 110 Stat. 56 (1996). ....................... 2, 18
*Restatement of Contracts* §236(d) (1932)............................................................................................. 28
Telecommunications Act of 1996, Pub. L. No. 104-404, 110 Stat. 56 (1996) ............................................ 21

# FCC DECISIONS

FCC CC Docket 96-98, *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, First Report and Order* (rel. Aug. 8, 1996) [*"FCC Local Competition Order"*]................................. 3, 4

FCC CC Docket No. 01-138, *In the Matter of Application of Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. for Authorization to Provide In-Region, InterLATA Services in Pennsylvania*, Memorandum Opinion and Order (adopted Sep. 19, 2001)................. 6

FCC WC Docket No. 02-384, *In the Matter of Application by Verizon Maryland Inc., Verizon Washington, D.C. Inc., Verizon West Virginia Inc., Bell Atlantic Communications (d/b/a Verizon Long Distance), NYNEX Long Distance Company (d/b/a Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc., for Authorization to Provide In-Region, InterLATA Services in Maryland, Washington, D.C., and West Virginia*, Memorandum Opinion and Order (adopted Mar. 18, 2003)........................................................................ 5

FCC WC Docket No. 04-313, CC Docket No. 01-338, In the Matter of Unbundled Access to Network Elements Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, Order on Remand .................... 3