# WHOLESALE ADVANTAGE SERVICES AGREEMENT

THIS WHOLESALE ADVANTAGE SERVICES AGREEMENT (this "Agreement") is effective as of July 1, 2005 ("Effective Date") by and among Verizon Services Corp., with offices at 1310 North Court House Rd., Arlington, VA 22201, on behalf of each of the affiliated Incumbent Local Exchange Carriers listed in Attachment 1 hereto (individually and collectively, "Verizon"), and Lightwave Communications, LLC ("Lightwave"), with offices at 14504 Greenview Drive, Suite 302, Laurel, Maryland 20708 (each individually, a "Party," and collectively, the "Parties").

**WHEREAS**, prior to the Effective Date of this Agreement, Verizon provided Lightwave with platforms of unbundled network elements ("UNE-P") pursuant to interconnection agreements governed by, inter alia, Sections 251 and 252 of the Communications Act of 1934 (47 U.S.C. Section 151 et seq.), as amended (the "Act"), which Lightwave has used to provide dialtone services to its end users; and

**WHEREAS**, the Parties seek to replace Verizon's provision of UNE-P to Lightwave with a long term commercial alternative;

**WHEREAS**, as part of such long term commercial alternative to UNE-P, Verizon is prepared to offer wholesale dialtone services to Lightwave for a period of five years in the form of what is known as Verizon's Wholesale Advantage service offering on terms that preserve, to the extent practicable, the features, functionality and ordering processes previously available to Lightwave under Verizon's UNE-P service offerings, but at commercially reasonable rates and charges;

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties, intended to be bound, hereby agree as follows:

1. **Services Description**

Subject to the availability of necessary facilities, and as described more particularly in Attachment 2 hereto, the Services offered by Verizon under this Agreement (the "Services") shall consist of local circuit switched dialtone services, comprised of DS0 Loops and Local Circuit Switching (including shared transport and SS7 signaling facilities used in conjunction with such switching), that provide all the features and functionalities of Verizon's DS0 UNE-P services offerings previously made available to Lightwave under its interconnection agreements with Verizon and through certain Verizon state tariffs.

2. **Scope of Agreement**

2.1   During the Term of this Agreement Verizon shall provide the Services to Lightwave upon receipt of a correct and complete order, in accordance with the terms and conditions set forth herein. In order to ensure the availability of ancillary services

customarily used in connection with unbundled switching services, the Services provided herein shall be available to Lightwave only if Lightwave is and remains party to an effective interconnection agreement with Verizon (or, alternatively, purchases out of the comprehensive Verizon wholesale tariff or Statement of Generally Available Terms) in each jurisdiction in which it seeks to obtain such Services; provided, however, that this Agreement shall not be deemed to be an amendment to or otherwise a part of any such interconnection agreement, even where such interconnection agreements otherwise are referenced herein. This Agreement is comprised of this principal document and Attachments 1 through 5, which are attached hereto and made an integral part hereof.

2.2    In consideration for Verizon's provision of the Services and without the assessment of any conversion charges, Lightwave shall convert all of its DS0 UNE-P lines in service with Verizon as of June 30, 2005 to the Services provided under this Agreement, and shall ensure that 50% of all new DS0 loops ordered by Lightwave from Verizon during the Term (whether in a standalone or other configuration) shall be used in connection with Services ordered under this Agreement. In the event Verizon should continue to offer or provide UNE-P or local switching services on an unbundled basis under the Act or other Applicable Law after the Effective Date, Lightwave expressly waives any right it may have to purchase such UNE-P or local switching services on an unbundled basis from Verizon during the Term.

**REDACTED**

## 8. Applicable Law

8.1 The construction, interpretation and performance of this Agreement shall be governed by (a) the laws of the United States of America and (b) the laws of the State of New York, without regard to its conflicts of laws rules. All disputes relating to this Agreement shall be resolved through the application of such laws. Verizon and Lightwave each irrevocably consents to the personal and subject matter jurisdiction of the courts located in the Borough of Manhattan, State of New York to the extent necessary to give effect to or to enforce the provisions of this Agreement, and waives any defense of lack of jurisdiction, improper venue or inconvenient forum.

8.2 Each Party shall remain in compliance with Applicable Law in the course of performing this Agreement.

8.3 Each Party shall promptly notify the other Party in writing of any governmental action that limits, suspends, cancels, withdraws, or otherwise materially affects, the notifying Party's ability to perform its obligations under this Agreement.

**REDACTED**

11. **Authorization**

Notwithstanding any other provision of this Agreement, Verizon shall have no obligation to perform under this Agreement until such time as Lightwave has obtained such Federal Communication Commission ("FCC") and state utility commission authorizations as may be required by Applicable Law for conducting business in the states where Lightwave intends to purchase the Services. Lightwave shall provide proof of such authorization to Verizon upon request.

**REDACTED**

# REDACTED

### 18. Dispute Resolution

Controversies, claims, and disputes (including billing disputes) that arise on or after the Effective Date and that arise out of or relate to this Agreement shall be submitted to binding arbitration in accordance with the provisions hereof. Either Party may demand arbitration by sending written notice to the other Party. The Parties shall promptly submit the dispute to the American Arbitration Association for resolution by a single neutral arbitrator acceptable to both parties, as selected under the rules of the American Arbitration Association. The dispute shall then be administered according to the American Arbitration Association's Commercial Arbitration Rules, with the following modifications: (i) the arbitration shall be held in a location mutually acceptable to the Parties, and if the Parties fail to agree, the location shall be in the Borough of Manhattan, State of New York; (ii) the arbitrator shall be licensed to practice law; (iii) the arbitrator shall conduct the arbitration as if it were a bench trial and shall use, apply and enforce the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the laws of the State of New York, without regard to its conflicts of laws rules, including the laws and decisions pertaining to enforcement and interpretation of contracts; (iv) except for breaches related to Confidential Information and as otherwise provided in Section 27.6, the arbitrator shall have no power or authority to make any award that provides for

special, indirect, incidental, consequential, reliance, exemplary, punitive or like damages, including damages for lost revenues, profits or savings or other commercial or economic loss, even if the person whose liability is excluded by this Section has been advised of the possibility of such damages; (v) the arbitrator shall control the scheduling so that the hearing is completed no later than thirty (30) days after the date of the demand for arbitration; and (vi) the arbitrator's decision shall be given within five (5) days thereafter in summary form that states the award, without written decision, which shall follow the plain meaning of this Agreement, the relevant documents, and the intent of the parties. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction over the parties. Each party to the dispute shall bear its own expenses arising out of the arbitration, except that the expenses of the facilities to conduct the arbitration and the fees of the arbitrator shall be shared equally by the Parties. Should either Party fail to comply with the provisions of this Section 18, the other Party may seek enforcement of this Section 18 pursuant to the provisions of Section 8.1 above.

# **REDACTED**

**REDACTED**

**35. Sections 251/252/271 of the Act**

35.1 Verizon and Lightwave acknowledge and agree that: (a) Verizon's provision of the Services to Lightwave does not constitute a request by Lightwave, nor does Verizon's provision of the Services to Lightwave constitute an offer by Verizon, for interconnection, unbundled access, resale or other Services pursuant to Section 251 of the Act, and (b) this Agreement is not subject to Section 252 of the Act, including any requirement to negotiate, mediate, or arbitrate the Agreement pursuant to Section 252 of the Act, or file the Agreement with any state utility commission or the FCC. Further, for the Term of this Agreement, Lightwave: (i) agrees that it will not claim in any forum whatsoever (including in the press, or before a state or federal regulator) that the Services provided under this Agreement are subject to Sections 251 or 271 of the Act, or that Verizon is not meeting its unbundling obligations under Sections 251 or 271 of the Act with respect to Local Switching; (ii) waives any right to request Verizon to provision unbundled Local Switching under Section 271 of the Act; and (iii) agrees not to directly participate in any portion of any action regarding unbundling of Local Switching under

Section 251 or 271 of the Act (e.g., Lightwave would not appear as a party or file pleadings or correspondence in any such actions) if Verizon is a party in that proceeding.

35.2   The Agreement may be filed with the FCC or each applicable state commission, as determined by Verizon; provided, however, that Lightwave may file the Agreement with the FCC or applicable state commission if Lightwave: (1) is ordered to do so by the FCC or applicable state commission in a final, non-appealable order, (2) provides written notice to Verizon of an order of the FCC or applicable state commission requiring the filing of the Agreement so that Verizon has an opportunity to oppose the filing requirement (including appealing the order, if necessary), and (3) does not oppose, or if requested by Verizon, makes known its support of, steps undertaken by Verizon to oppose or appeal any filing requirement or to obtain a protective order from the FCC or applicable state commission such that the Agreement shall be filed as confidential information under seal. Nothing in this Section 35.2 shall derogate from the rights set forth in Section 7 above.

**REDACTED**

## SIGNATURE PAGE

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

**Lightwave Communications, LLC**

By: *[signature]*

Printed: MARK J. RICIGLIANO

Title: CEO

**Verizon Services Corp.**

By: *[signature]*

Printed: DAVID J. SMALL

Title: Sr. VICE PRESIDENT

003342

**Attachment 3- Pricing**

1. **Rates for the Services**

Except as set forth in subsections 1.1- 1.4 of this Attachment 3, Verizon shall bill and Lightwave shall pay the individual rates for the Services identical to the applicable rates for the particular DS0 UNE-P and associated features, including recurring and nonrecurring rates applicable to each individual unbundled network element comprising a DS0 UNE-P line as well as applicable mileage and usage charges, OSS charges and any other rate element charges, as set forth in the applicable interconnection agreement between the Parties or in the applicable Verizon state tariff as of the date three hundred twenty (320) days prior to the Effective Date or August 15, 2004, whichever date results in higher charges (all such charges, the "Underlying Charges"),[1] which state specific charges are set forth in the thirty-one (31) Rate Attachments to this Attachment 3;[2] provided, however, that the monthly recurring rate for the DS0 (or POTS) switch port previously available under Lightwave's interconnection agreement with Verizon or Verizon state tariff in each particular serving area as of the date three hundred twenty (320) days prior to the Effective Date or August 15, 2004, whichever date results in a higher rate, shall be increased by the Surcharges set forth in Appendix A to this Attachment 3.

Notwithstanding the foregoing:

1.1   *Intentionally left blank*

1.2   As part of the Underlying Charges (to which the Surcharge will be added), Verizon shall bill and Lightwave shall also pay any charges in effect at that time in a particular state (as evidenced by Verizon's standard price schedule for interconnection agreements in that state) imposed by Verizon to recover costs for Operations Support Systems that will be utilized by Lightwave for pre-ordering, ordering, billing, provisioning, repair and other processes associated with the Wholesale Advantage service offering.

1.3   As part of the Underlying Charges (to which the Surcharge will be added), Verizon shall bill and Lightwave shall pay Verizon's then-current rates for

---

[1] In the states where there was no effective interconnection agreement or applicable state tariff as of August 15, 2004, the relevant charges from Verizon's standard price schedule as of that date or the date three hundred twenty (320) days prior to the Effective Date, whichever date results in higher charges, shall apply.
[2] The Parties have attempted to include all applicable charges in the thirty-one (31) Rate Attachments addressing the following Verizon service territories: Delaware, Washington, D.C., Connecticut, Maryland, Maine, New Hampshire, New York, New Jersey, Rhode Island, Vermont, Massachusetts, West Virginia, Virginia (Verizon Virginia Inc.), Virginia (Verizon South Inc.), Pennsylvania (Verizon Pennsylvania Inc.), Pennsylvania (Verizon North Inc.), Michigan, California, Florida, Idaho, Illinois, Indiana, Arizona, Wisconsin, Nevada, Ohio, Oregon, South Carolina, Texas, Washington, and North Carolina. However, in the event that an applicable rate or rate element in effect as of August 15, 2004 is omitted from the Rate Attachments, the Parties will amend this Agreement to include the missing rate or rate element and Verizon will bill and Lightwave shall pay such rate (or such rate in effect three hundred twenty (320) days prior to the Effective Date, whichever date results in a higher rate) as of the Effective Date.

**REDACTED**

**VL Usage**
| | |
|---|---|
| Originating Local Switching - POTS with Features | N/A |
| Originating Local Switching - ISDN Voice* | N/A |
| Originating Local Switching - ISDN Data* | N/A |
| Terminating Local Switching - POTS with Features | N/A |
| Terminating Local Switching - ISDN Voice* | N/A |
| Terminating Local Switching - ISDN Data* | N/A |

**REDACTED**