002078

# AMENDED, EXTENDED AND RESTATED AGREEMENT

by and between

LIGHTWAVE COMMUNICATIONS, LLC

and

VERIZON VIRGINIA INC.

FOR THE COMMONWEALTH OF

VIRGINIA

1.4 Except as otherwise provisioned in the Principal Document, the Principal Document may not be waived or modified except by a written document that is signed by the Parties. Subject to the requirements of Applicable Law, a Party shall have the right to add, modify, or withdraw, its Tariff(s) at any time, without the consent of, or notice to, the other Party.

2. **Term and Termination**

   2.1 This Agreement shall be effective as of the Effective Date and, unless cancelled or terminated earlier in accordance with the terms hereof, shall continue in effect until November 24, 2004 (the "Initial Term"). Thereafter, this Agreement shall continue in force and effect unless and until cancelled or terminated as provided in this Agreement.

   2.2 Either LightWave or Verizon may terminate this Agreement effective upon the expiration of the Initial Term or effective upon any date after expiration of the Initial Term by providing written notice of termination at least ninety (90) days in advance of the date of termination.

   2.3 If either LightWave or Verizon provides notice of termination pursuant to Section 2.2 and on or before the proposed date of termination either LightWave or Verizon has requested negotiation of a new interconnection agreement, unless this Agreement is cancelled or terminated earlier in accordance with the terms hereof (including, but not limited to, pursuant to Section 12), this Agreement shall remain in effect until the earlier of: (a) the effective date of a new interconnection agreement between LightWave and Verizon; or, (b) the date one (1) year after the proposed date of termination.

   2.4 If either LightWave or Verizon provides notice of termination pursuant to Section 2.2 and by 11:59 PM Eastern Time on the proposed date of termination neither LightWave nor Verizon has requested negotiation of a new interconnection agreement, (a) this Agreement will terminate at 11:59 PM Eastern Time on the proposed date of termination, and (b) the Services being provided under this Agreement at the time of termination will be terminated, except to the extent that the Purchasing Party has requested that such Services continue to be provided pursuant to an applicable Tariff or Statement of Generally Available Terms (SGAT).

3. **Glossary and Attachments**

   The Glossary and the following Attachments are a part of this Agreement:

   Additional Services Attachment

   Interconnection Attachment

   Resale Attachment

   Network Elements Attachment

   Collocation Attachment

   911 Attachment

   Pricing Attachment

4. **Applicable Law**

   4.1 The construction, interpretation and performance of this Agreement shall be governed by (a) the laws of the United States of America and (b) the laws of the

Commonwealth of Virginia, without regard to its conflicts of laws rules. All disputes relating to this Agreement shall be resolved through the application of such laws.

4.2   Each Party shall remain in compliance with Applicable Law in the course of performing this Agreement.

4.3   Neither Party shall be liable for any delay or failure in performance by it that results from requirements of Applicable Law, or acts or failures to act of any governmental entity or official.

4.4   Each Party shall promptly notify the other Party in writing of any governmental action that limits, suspends, cancels, withdraws, or otherwise materially affects, the notifying Party's ability to perform its obligations under this Agreement.

4.5   If any provision of this Agreement shall be invalid or unenforceable under Applicable Law, such invalidity or unenforceability shall not invalidate or render unenforceable any other provision of this Agreement, and this Agreement shall be construed as if it did not contain such invalid or unenforceable provision; provided, that if the invalid or unenforceable provision is a material provision of this Agreement, or the invalidity or unenforceability materially affects the rights or obligations of a Party hereunder or the ability of a Party to perform any material provision of this Agreement, the Parties shall promptly renegotiate in good faith and amend in writing this Agreement in order to make such mutually acceptable revisions to this Agreement as may be required in order to conform the Agreement to Applicable Law.

4.6   If any legislative, regulatory, judicial or other governmental decision, order, determination or action, or any change in Applicable Law, materially affects any material provision of this Agreement, the rights or obligations of a Party hereunder, or the ability of a Party to perform any material provision of this Agreement, the Parties shall promptly renegotiate in good faith and amend in writing this Agreement in order to make such mutually acceptable revisions to this Agreement as may be required in order to conform the Agreement to Applicable Law. If within thirty (30) days of the effective date of such decision, determination, action or change, the Parties are unable to agree in writing upon mutually acceptable revisions to this Agreement, either Party may pursue any remedies available to it under this Agreement, at law, in equity, or otherwise, including, but not limited to, instituting an appropriate proceeding before the Commission, the FCC, or a court of competent jurisdiction, without first pursuing dispute resolution in accordance with Section 14 of this Agreement.

4.7   Notwithstanding anything in this Agreement to the contrary, if, as a result of any legislative, judicial, regulatory or other governmental decision, order, determination or action, or any change in Applicable Law, Verizon is not required by Applicable Law to provide any Service, payment or benefit, otherwise required to be provided to LightWave hereunder, then Verizon may discontinue the provision of any such Service, payment or benefit, and LightWave shall reimburse Verizon for any payment previously made by Verizon to LightWave that was not required by Applicable Law. Verizon will provide thirty (30) days prior written notice to LightWave of any such discontinuance of a Service, unless a different notice period or different conditions are specified in this Agreement (including, but not limited to, in an applicable Tariff) or Applicable Law for termination of such Service in which event such specified period and/or conditions shall apply.

**5.   Assignment**

10.2.2 Verizon shall offer, as an optional chargeable feature, usage tapes in accordance with Section 8 of the Additional Services Attachment.

10.2.3 LightWave may request activation or deactivation of features on a per-port basis at any time, and shall compensate Verizon for the non-recurring charges associated with processing the order. LightWave may submit a Bona Fide Request in accordance with Section 14.3 of this Attachment for other switch features and functions that the switch is capable of providing, but which Verizon does not currently provide, or for customized routing of traffic other than operator services and/or directory assistance traffic. Verizon shall develop and provide these requested services where technically feasible with the agreement of LightWave to pay the recurring and non-recurring costs of developing, installing, updating, providing and maintaining these services.

10.3    Network Design Request (NDR).

Prior to submitting any order for unbundled local switching (as a UNE or in combination with other UNEs), LightWave shall complete the NDR process. As part of the NDR process, LightWave shall request standardized or customized routing of its Customer traffic in conjunction with the provision of unbundled Local Switching.

If LightWave selects customized routing, LightWave shall define the routing plan and Verizon shall implement such plan, subject to technical feasibility constraints. Time and Material Charges may apply.

10.4    Tandem Switching.

The unbundled Tandem switching element includes trunk-connect facilities, the basic switching function of connecting trunks to trunks, and the functions that are centralized in Tandem Switches. Unbundled Tandem switching creates a temporary transmission path between interoffice trunks that are interconnected at a Verizon access Tandem for the purpose of routing a call or calls.

11.    **Unbundled Interoffice Facilities**

11.1    Subject to the conditions set forth in Section 1 of this Attachment, where facilities are available, at LightWave's request, Verizon shall provide LightWave with interoffice facilities (IOF) unbundled from other Network Elements at the rates set forth in the Pricing Attachment; provided, however, that Verizon shall offer unbundled shared IOF only to the extent that LightWave also purchases unbundled Local Switching capability from Verizon in accordance with Section 10 of this Attachment. Verizon shall provide LightWave with such IOF in accordance with, but only to the extent required by, Applicable Law. Verizon will not install new electronics, and Verizon will not build new facilities.

11.2    If and, to the extent that, LightWave has purchased (or purchases) transport from Verizon under a Verizon tariff or otherwise, and LightWave has a right under Applicable Law to convert (and wishes to convert) such transport to unbundled IOF under this Agreement, it shall give Verizon written notice of such request (including, without limitation, through submission of ASRs if Verizon so requests) and provide to Verizon all information (including, without limitation, a listing of the specific circuits in question) that Verizon reasonably requires to effectuate such conversion. In the case of any such conversion, LightWave shall pay any and all conversion charges (e.g., non-recurring charges), as well as any and all

002192

termination liabilities, minimum service period charges and like charges in accordance with Verizon's applicable tariffs.

12. **Signaling Networks and Call-Related Databases**

12.1 Subject to the conditions set forth in Section 1 of this Attachment and upon request by LightWave, Verizon shall provide LightWave with access to databases and associated signaling necessary for call routing and completion by providing SS7 Common Channel Signaling ("CCS") Interconnection, and Interconnection and access to toll free service access code (e.g., 800/888/877) databases, LIDB, and any other necessary databases, in accordance with this Section 12 and the rates and charges provided in the Pricing Attachment. Such access shall be provided by Verizon in accordance with, but only to the extent required by, Applicable Law.

12.2 LightWave shall provide Verizon with CCS Interconnection required for call routing and completion, and the billing of calls which involve LightWave's Customers, at non-discriminatory rates (subject to the provisions of the Pricing Attachment), terms and conditions, provided further that if the LightWave information Verizon requires to provide such call-related functionality is resident in a database, LightWave will provide Verizon with the access and authorization to query LightWave's information in the databases within which it is stored.

12.3 Alternatively, either Party ("Purchasing Party") may secure CCS Interconnection from a commercial SS7 hub provider (third party signaling provider) to transport signaling messages to and from the Verizon CCS network, and in that case the other Party will permit the Purchasing Party to access the same databases as would have been accessible if the Purchasing Party had connected directly to the other Party's CCS network. If a third party signaling provider is selected by LightWave to transport signaling messages, that third party provider must present a letter of agency to Verizon, prior to the testing of the interconnection, authorizing the third party to act on behalf of LightWave.

12.4 Regardless of the manner in which LightWave obtains CCS Interconnection, LightWave shall comply with Verizon's SS7 certification process prior to establishing CCS Interconnection with Verizon.

12.5 The Parties will provide CCS Signaling to each other, where and as available, in conjunction with all Reciprocal Compensation Traffic, Toll Traffic, Meet Point Billing Traffic, and Transit Traffic. The Parties will cooperate on the exchange of TCAP messages to facilitate interoperability of CCS-based features between their respective networks, including all CLASS Features and functions, to the extent each Party offers such features and functions to its Customers. All CCS Signaling parameters will be provided upon request (where available), including called party number, Calling Party Number, originating line information, calling party category, and charge number. All privacy indicators will be honored as required under applicable law.

12.6 The Parties will follow all OBF-adopted standards pertaining to CIC/OZZ codes.

12.7 Where CCS Signaling is not available, in-band multi-frequency ("MF") wink start signaling will be provided. Any such MF arrangement will require a separate local trunk circuit between the Parties' respective switches in those instances where the Parties have established End Office to End Office high usage trunk groups. In such an arrangement, each Party will out pulse the full ten-digit telephone number of the called Party to the other Party.

Appendix 1

# AGREEMENT

by and between

**LIGHTWAVE COMMUNICATIONS, LLC**

and

**VERIZON SOUTH INC., F/K/A GTE SOUTH INCORPORATED**

**FOR THE COMMONWEALTH OF**

**VIRGINIA**

002243

Appendix 1

      Initial Term by providing written notice of termination at least ninety (90) days in advance of the date of termination.

2.3    If either LightWave or Verizon provides notice of termination pursuant to Section 2.2 and on or before the proposed date of termination either LightWave or Verizon has requested negotiation of a new interconnection agreement, unless this Agreement is cancelled or terminated earlier in accordance with the terms hereof (including, but not limited to, pursuant to Section 12), this Agreement shall remain in effect until the earlier of: (a) the effective date of a new interconnection agreement between LightWave and Verizon; or, (b) the date one (1) year after the proposed date of termination.

2.4    If either LightWave or Verizon provides notice of termination pursuant to Section 2.2 and by 11:59 PM Eastern Time on the proposed date of termination neither LightWave nor Verizon has requested negotiation of a new interconnection agreement, (a) this Agreement will terminate at 11:59 PM Eastern Time on the proposed date of termination, and (b) the Services being provided under this Agreement at the time of termination will be terminated, except to the extent that the Purchasing Party has requested that such Services continue to be provided pursuant to an applicable Tariff or Statement of Generally Available Terms (SGAT).

3. **Glossary and Attachments**

The Glossary and the following Attachments are a part of this Agreement:

    Additional Services Attachment

    Interconnection Attachment

    Resale Attachment

    Network Elements Attachment

    Collocation Attachment

    911 Attachment

    Pricing Attachment

4. **Applicable Law**

4.1    The construction, interpretation and performance of this Agreement shall be governed by (a) the laws of the United States of America and (b) the laws of the Commonwealth of Virginia, without regard to its conflicts of laws rules. All disputes relating to this Agreement shall be resolved through the application of such laws.

4.2    Each Party shall remain in compliance with Applicable Law in the course of performing this Agreement.

4.3    Neither Party shall be liable for any delay or failure in performance by it that results from requirements of Applicable Law, or acts or failures to act of any governmental entity or official.

4.4    Each Party shall promptly notify the other Party in writing of any governmental action that limits, suspends, cancels, withdraws, or otherwise materially affects, the notifying Party's ability to perform its obligations under this Agreement.

4.5    If any provision of this Agreement shall be invalid or unenforceable under Applicable Law, such invalidity or unenforceability shall not invalidate or render

Appendix 1

unenforceable any other provision of this Agreement, and this Agreement shall be construed as if it did not contain such invalid or unenforceable provision; provided, that if the invalid or unenforceable provision is a material provision of this Agreement, or the invalidity or unenforceability materially affects the rights or obligations of a Party hereunder or the ability of a Party to perform any material provision of this Agreement, the Parties shall promptly renegotiate in good faith and amend in writing this Agreement in order to make such mutually acceptable revisions to this Agreement as may be required in order to conform the Agreement to Applicable Law.

4.6 If any legislative, regulatory, judicial or other governmental decision, order, determination or action, or any change in Applicable Law, materially affects any material provision of this Agreement, the rights or obligations of a Party hereunder, or the ability of a Party to perform any material provision of this Agreement, the Parties shall promptly renegotiate in good faith and amend in writing this Agreement in order to make such mutually acceptable revisions to this Agreement as may be required in order to conform the Agreement to Applicable Law. If within thirty (30) days of the effective date of such decision, determination, action or change, the Parties are unable to agree in writing upon mutually acceptable revisions to this Agreement, either Party may pursue any remedies available to it under this Agreement, at law, in equity, or otherwise, including, but not limited to, instituting an appropriate proceeding before the Commission, the FCC, or a court of competent jurisdiction, without first pursuing dispute resolution in accordance with Section 14 of this Agreement.

4.7 Notwithstanding anything in this Agreement to the contrary, if, as a result of any legislative, judicial, regulatory or other governmental decision, order, determination or action, or any change in Applicable Law, Verizon is not required by Applicable Law to provide any Service, payment or benefit, otherwise required to be provided to LightWave hereunder, then Verizon may discontinue the provision of any such Service, payment or benefit, and LightWave shall reimburse Verizon for any payment previously made by Verizon to LightWave that was not required by Applicable Law. Verizon will provide thirty (30) days prior written notice to LightWave of any such discontinuance of a Service, unless a different notice period or different conditions are specified in this Agreement (including, but not limited to, in an applicable Tariff) or Applicable Law for termination of such Service in which event such specified period and/or conditions shall apply.

5. **Assignment**

Neither Party may assign this Agreement or any right or interest under this Agreement, nor delegate any obligation under this Agreement, without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed. Any attempted assignment or delegation in violation of this Section 5 shall be void and ineffective and constitute default of this Agreement.

6. **Assurance of Payment**

6.1 Upon request by Verizon, LightWave shall provide to Verizon adequate assurance of payment of amounts due (or to become due) to Verizon hereunder.

6.2 Assurance of payment of charges may be requested by Verizon if LightWave (a) in Verizon's reasonable judgment, at the Effective Date or at any time thereafter, does not have established credit with Verizon, (b) in Verizon's reasonable judgment, at the Effective Date or at any time thereafter, is unable to demonstrate that it is creditworthy, (c) fails to timely pay a bill rendered to

002251

and Verizon shall implement such plan, subject to technical feasibility constraints. Time and Material Charges may apply.

10.4    Tandem Switching.

The unbundled Tandem switching element includes trunk-connect facilities, the basic switching function of connecting trunks to trunks, and the functions that are centralized in Tandem Switches. Unbundled Tandem switching creates a temporary transmission path between interoffice trunks that are interconnected at a Verizon access Tandem for the purpose of routing a call or calls.

11.  **Unbundled Interoffice Facilities**

Subject to the conditions set forth in Section 1 of this Attachment, where facilities are available, at LightWave's request, Verizon shall provide LightWave with interoffice facilities (IOF) unbundled from other Network Elements at the rates set forth in the Pricing Attachment; provided, however, that Verizon shall offer unbundled shared IOF only to the extent that LightWave also purchases unbundled Local Switching capability from Verizon in accordance with Section 10 of this Attachment. Verizon shall provide LightWave with such IOF in accordance with, but only to the extent required by, Applicable Law.

12.  **Signaling Networks and Call-Related Databases**

12.1    Subject to the conditions set forth in Section 1 of this Attachment and upon request by LightWave, Verizon shall provide LightWave with access to databases and associated signaling necessary for call routing and completion by providing SS7 Common Channel Signaling ("CCS") Interconnection, and Interconnection and access to toll free service access code (e.g., 800/888/877) databases, LIDB, and any other necessary databases, in accordance with this Section 12 and the rates and charges provided in the Pricing Attachment. Such access shall be provided by Verizon in accordance with, but only to the extent required by, Applicable Law.

12.2    LightWave shall provide Verizon with CCS Interconnection required for call routing and completion, and the billing of calls which involve LightWave's Customers, at non-discriminatory rates (subject to the provisions of the Pricing Attachment), terms and conditions, provided further that if the LightWave information Verizon requires to provide such call-related functionality is resident in a database, LightWave will provide Verizon with the access and authorization to query LightWave's information in the databases within which it is stored.

12.3    Alternatively, either Party ("Purchasing Party") may secure CCS Interconnection from a commercial SS7 hub provider (third party signaling provider) to transport signaling messages to and from the Verizon CCS network, and in that case the other Party will permit the Purchasing Party to access the same databases as would have been accessible if the Purchasing Party had connected directly to the other Party's CCS network. If a third party signaling provider is selected by LightWave to transport signaling messages, that third party provider must present a letter of agency to Verizon, prior to the testing of the interconnection, authorizing the third party to act on behalf of LightWave.

12.4    Regardless of the manner in which LightWave obtains CCS Interconnection, LightWave shall comply with Verizon's SS7 certification process prior to establishing CCS Interconnection with Verizon.

12.5    The Parties will provide CCS Signaling to each other, where and as available, in conjunction with all Reciprocal Compensation Traffic, Toll Traffic, Meet Point



Jeffrey A. Masoner
Vice President
Interconnection Services Policy and Planning
Wholesale Marketing

2107 Wilson Boulevard
Arlington, VA 22201

Phone 703 974-4610
Fax 703 974-0314
jeffrey.a.masoner@verizon.com

July 22, 2003

Mark Ricigliano
Chief Executive Officer
Lightwave Communications, LLC
14504 Greeview Drive, Suite 302 Laurel, Maryland 20708

Re: Requested Adoption Under the FCC Merger Conditions

Dear Mr. Ricigliano:

Verizon Maryland, Inc. ("Verizon"), a Maryland corporation with its principal place of business at 1 East Pratt Street, Baltimore, Maryland 21202, has received your letter stating that, pursuant to paragraph 31(a) of the BA/GTE Merger Conditions ("Merger Conditions"), released by the FCC on June 16, 2000 in CC Docket No. 98-184, Lightwave Communications, LLC ("Lightwave"), a Delaware Limited Liability Corporation with its principal place of business at 14504 Greeview Drive, Suite 302, Laurel, Maryland 20708, wishes to provide services to customers in Verizon's service territory in the State of Maryland by adopting the voluntarily negotiated terms of the Interconnection Agreement between Lightwave Telecommunications, LLC ("Lightwave") and Verizon South Inc., f/k/a GTE South Incorporated ("Verizon Virginia") that was approved by the Virginia State Corporation Commission as an effective agreement in the Commonwealth of Virginia, as such agreement exists on the date hereof after giving effect to operation of law (the "Verizon Virginia Terms").

I understand that Lightwave has a copy of the Verizon Virginia Terms which, in any case, are attached hereto as Appendix 1. Please note the following with respect to Lightwave's adoption of the Verizon Virginia Terms.

1.  By Lightwave's countersignature on this letter, Lightwave hereby represents and agrees to the following four points:

(A)  Lightwave agrees to be bound by and adopts in the service territory of Verizon, the Verizon Virginia Terms, as they are in effect on the date hereof after giving effect to operation of law, and in applying the Verizon Virginia Terms, agrees that references to Lightwave Communications, LLC and Lightwave in the Verizon Virginia Terms shall apply for this adoption as well as for the underlying agreement.

(B)  Notice to Lightwave and Verizon as may be required or permitted under the Verizon Virginia Terms shall be provided as follows:

To Lightwave:

> Attention: Mark Ricigliano
> Chief Executive Officer
> 14504 Greeview Drive, Suite 302
> Laurel, Maryland 20708
> Telephone Number: (301) 953-9031
> Facsimile Number: (301) 953-2454
> Internet Address: mricigliano@lightwavecomm.net

To Verizon:

> Director-Contract Performance & Administration
> Verizon Wholesale Markets
> 600 Hidden Ridge, HQEWMNOTICES
> Irving, TX 75038
> Telephone Number: 972/718-5988
> Facsimile Number: 972/719-1519
> Internet Address: wmnotices@verizon.com

with a copy to:

> Vice President and Associate General Counsel
> Verizon Wholesale Markets
> 1515 North Court House Road, Suite 500
> Arlington, VA 22201
> Facsimile: 703/351-3664

(C)  Lightwave represents and warrants that it is a certified provider of local telecommunications service in the State of Maryland, and that its adoption of the Verizon Virginia Terms will only cover services in the service territory of Verizon in the State of Maryland.

(D)  In the event an interconnection agreement between Verizon and Lightwave is currently in effect in the State of Maryland (the "Original ICA"), this adoption shall be an amendment and restatement of the operating terms and conditions of the Original ICA, and shall replace in

their entirety the terms of the Original ICA. This adoption is not intended to be, nor shall it be construed to create, a novation or accord and satisfaction with respect to the Original ICA. Any outstanding payment obligations of the parties that were incurred but not fully performed under the Original ICA shall constitute payment obligations of the parties under this adoption.

2. Lightwave's adoption of the Verizon Virginia Terms shall become effective on July 30, 2003. Verizon shall file this adoption letter with the Maryland Public Service Commission ("Commission") promptly upon receipt of an original of this letter, countersigned by an authorized officer of Lightwave. The term and termination provisions of the Lightwave/Verizon Virginia agreement shall govern Lightwave's adoption of the Verizon Virginia Terms. Lightwave's adoption of the Verizon Virginia Terms is currently scheduled to expire on August 6, 2004.

3. As the Verizon Virginia Terms are being adopted by Lightwave pursuant to the Merger Conditions, Verizon does not provide the Verizon Virginia Terms to Lightwave as either a voluntary or negotiated agreement. The filing and performance by Verizon of the Verizon Virginia Terms does not in any way constitute a waiver by Verizon of any position as to the Verizon Virginia Terms or a portion thereof. Nor does it constitute a waiver by Verizon of any rights and remedies it may have to seek review of the Verizon Virginia Terms, or to seek review of any provisions included in these Verizon Virginia Terms as a result of Lightwave's election pursuant to the Merger Conditions.

4. For avoidance of doubt, please note that adoption of the Verizon Virginia Terms will not result in reciprocal compensation payments for Internet traffic. Verizon has always taken the position that reciprocal compensation was not due to be paid for Internet traffic under section 251(b)(5) of the Act. Verizon's position that reciprocal compensation is not to be paid for Internet traffic was confirmed by the FCC in the Order on Remand and Report and Order adopted on April 18, 2001 ("*FCC Remand Order*"), which held that Internet traffic constitutes "information access" outside the scope of the reciprocal compensation obligations set forth in section 251(b)(5) of the Act.[1] Accordingly, compensation for Internet traffic – if any – is governed by the terms of the *FCC Remand Order*, not pursuant to adoption of the Verizon Virginia Terms.[2] Moreover, in light of the *FCC Remand Order*, even if the Verizon Virginia Terms include provisions invoking an

---

[1] Order on Remand and Report and Order, In the Matters of: Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 and Intercarrier Compensation for ISP-Bound Traffic, CC Docket No. 99-68 (rel. April 27, 2001) ("*FCC Remand Order*") ¶44, *remanded, WorldCom, Inc. v. FCC*, No. 01-1218 (D.C. Cir. May 3, 2002). Although the D.C. Circuit remanded the *FCC Remand Order* to permit the FCC to clarify its reasoning, it left the order in place as governing federal law. *See WorldCom, Inc. v. FCC*, No. 01-1218, slip op. at 5 (D.C. Cir. May 3, 2002).

[2] For your convenience, an industry letter distributed by Verizon explaining its plans to implement the *FCC Internet Order* can be viewed at Verizon's Customer Support Website at URL www.verizon.com/wise (select Verizon East Customer Support, Business Resources, Customer Documentation, Resources, Industry Letters, CLEC, May 21, 2001 Order on Remand).

002387